386 So.2d 535 (1980)
Woodrow CROFT, Petitioner,
v.
PINKERTON-HAYES LUMBER COMPANY et al., Respondents.
No. 54366.
Supreme Court of Florida.
May 29, 1980.
Rehearing Denied August 27, 1980.
Ken Davis of Davis & Judkins, Tallahassee, for petitioner.
Charles Vocelle of Brannon, Brown, Norris, Vocelle & Haley, Lake City, for respondents.
SUNDBERG, Justice.
This cause is before us on petition for writ of certiorari to review an order of the Industrial Relations Commission. We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution. We find that the Commission departed from the essential requirements of law and therefore quash.
In 1975, petitioner was employed as a millwright in respondent's lumber company. His work, similar to that of a maintenance mechanic in heavy equipment, consisted of such duties as welding and repairing belts or chains.
On June 2 of that year, petitioner was engaged in a task which had occupied him for the past five days. His job was to dismantle a large carriage which was to be replaced by a more modern and efficient canting machine. Petitioner was working unusually hard on this job because his superintendent had told him to complete it in a hurry. Petitioner used a torch in the dismantling process continuously from 8:00 a.m. to 12:00 noon, and from 1:00 p.m. to 3:45 p.m., longer than he had ever used a torch before. He had to lie on his stomach to cut the metal. After 1:00 p.m. petitioner began working in a cramped area, the torch burning only eighteen inches from his face. It was exceedingly hot. At 3:45 p.m. while on his way to get some nails, petitioner collapsed. He was taken to Perry Hospital where he was diagnosed as having a subarachnoid hemorrhage secondary *536 to a ruptured aneurysm of the right anterior communicating artery. In lay terms, petitioner had suffered a stroke.
The Judge of Industrial Claims found that the strenuous activity required to dismantle the carriage caused petitioner's stroke. The Industrial Relations Commission disagreed, holding that the medical testimony linking petitioner's work activities to his injury was "speculative."
Petitioner is entitled to compensation if there is evidence to show that his injury resulted from exertion unusual to the ordinary requirements of employment. Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1962); Gateway Sporting Goods Co. v. Lutz, 328 So.2d 427 (Fla. 1976). It is essentially undisputed that the work involved in dismantling the carriage was unusually strenuous. The determinative issue here is whether petitioner's work activities actually caused the ruptured aneurysm. On this point the evidence is hopelessly in conflict. It is in just such a case that we must be acutely sensitive to the limited scope of our review:
[I]t is not the function of this Court or of the Industrial Relations Commission to re-weigh the evidence to see if we agree with the particular manner in which such conflicts were resolved by the Judge of Industrial Claims; rather, our function, and that of the Commission in this regard, is simply to determine if there was competent substantial evidence to support the findings of the Judge of Industrial Claims.
Howard v. Green's Tractor Co., 290 So.2d 46, 48 (Fla. 1973).
We have concluded that there was competent substantial evidence to support the finding that petitioner's work activities caused the ruptured aneurysm. Excerpted is a portion of Dr. Frank Davis's deposition which bolsters our conclusion:
Q (Mr. Vocelle) Right. In that context, I will ask you this one question, and it is similar to what we have been saying. Your clinical impression  I am not asking you anything but your clinical impression as to whether it was just a coincidence that it happened on the job rather than some place else.
A (Dr. Davis) If I can speak sort of generalizing on this, it might help. Given a patient who is working and doing manual labor work, physical exertion-type things, and he has a subarachnoid hemorrhage at that particular time, I would certainly be inclined to think there is more than likely a relationship between work and subarachnoid hemorrhaging than someone doing sedentary type work. They were sitting there at their desk and had their hemorrhage there.
On the other hand, there is no way that I can say with any kind of certainty whether or not this would not have been a coincidental thing, had he been sitting in church or whatever. But it is accepted that exertion is a predisposing factor towards a specific hemorrhage at a specific moment. But I don't know how I can say more.
Q I think you have said it very plainly.
A I cannot be any more specific than that.
Q And you would want to know the exertion at that time when he first began his complaints of pain?
A Yes, at that moment or just immediately preceding.
Q When you say "immediately preceding it," a few moments before 
A Minutes.
Q A few minutes.
MR. VOCELLE: Doctor, Thank you. Any more questions, Mr. Davis?
RECROSS EXAMINATION
BY MR. DAVIS:
Q Doctor, you are saying then subsequently that it is accepted in the medical profession as a predisposing factor to the subarachnoid hemorrhage if the person is exerting himself within minutes before the onset of the symptoms?
A Right. It would be a proximity thing as far as that specific rupture. You know, it's really how much enlargement *537 occurred prior to the rupture. In other words, whether or not it increased two or three million meters or X size just prior to the rupture, how much of an enlargement before it actually thinned out enough to rupture, and what the factors causing that straining and so forth, exertion and running the blood pressure up. It's hard to say. But I think as far as the time incidence of occurrence, it would be relevant as the activity at that moment or immediately preceding it. Talking about not days, but minutes, hours.
Q In other words, if a person was exerting himself pretty heavily with physical labor and thirty minutes later an aneurysm burst, you would feel then that there was some relationship between the exertion and 
A I say there is a possibility or a good probability there could have been, you know, a relationship. Again, it's very difficult to say conclusively about it. That's about as close as you can pin it down.
Q In other words, you are saying that probably there is a relationship between the exertion and a rupture of an aneurysm? You can't say 100 percent that that is the case?
A In any one particular case.
Q But probably there is? So then you could state within reasonable medical probability that there is a relationship between exertion and a rupture of an aneurysm within, say, thirty minutes thereof; is that correct? I am not saying a 100 percent certainty but a reasonable medical probability.
A I think that that would be reasonable.
We recognize that respondents could marshal substantial evidence to counter the above testimony. But again, our function, and that of the Industrial Relations Commission, is not to reweigh evidence.
Having found competent substantial evidence to support the findings of the Judge of Industrial Claims, we hold that the Industrial Relations Commission departed from the essential requirements of law in reversing the compensation award. We therefore quash the order of the Commission and remand to the Judge of Industrial Claims for proceedings not inconsistent with this opinion.
Attorneys' fees in the amount of $350 are assessed against respondents.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON and McDONALD, JJ., concur.
ALDERMAN, J., dissents with an opinion.
ALDERMAN, Justice, dissenting.
The Industrial Relations Commission applied the correct legal test in determining whether claimant's ruptured cranial aneurysm was compensable consistent with our recent pronouncement in Richard E. Mosca Co., Inc. v. Mosca, 362 So.2d 1340 (Fla. 1978). In addition to defining the test to be applied, the commission considered whether there was a causal relationship between the work activities engaged in by the claimant and his ruptured aneurysm and determined that there was no record testimony evidencing a direct linkage.
There is no departure from the essential requirements of the law when the commission reverses findings of the trial judge on the basis of inadequate evidence. Mahler v. Lauderdale Lakes National Bank, 322 So.2d 507 (Fla. 1975). The burden of proof is on the claimant to prove that a causal relationship exists between his work activities and his ruptured aneurysm. The commission, in its order, correctly points out that the "causal connection between the injury and employment may not be either speculative or based on mere possibilities."
I agree with the commission's conclusion that there is no testimony in this record that establishes a direct linkage between claimant's work and his injury. The most that has been shown is a possible relationship. This is apparent even in the portion of Dr. Davis's deposition quoted by the majority and upon which it relies to bolster its *538 conclusion. The sum of Dr. Davis's testimony was that "exertion is a predisposing factor towards a specific hemorrhage at a specific moment." He could not be any more specific than that. Even if we consider Dr. Davis's ambiguous answer, "I think that that would be reasonable," as an affirmative answer to counsel's leading question, "So then you could state within reasonable medical probability that there is a relationship between exertion and a rupture of an aneurysm within, say, thirty minutes thereof; is that correct?," there still is no testimony in the record that supports the conclusion of the trial judge that under the particular facts of this case there is a causal relationship between an unusual strain or overexertion by the claimant not routine to his normal duties and the subarachnoid hemorrhage or stroke that he suffered.
I would deny certiorari.