141 So.2d 581 (1961)
VICTOR WINE & LIQUOR, INC., and The Travelers Insurance Company, Petitioners,
v.
Harry BEASLEY and the Florida Industrial Commission, Respondents.
No. 30872.
Supreme Court of Florida.
May 3, 1961.
On Rehearing April 4, 1962.
Rehearing Denied June 12, 1962.
*582 Leo M. Alpert, Miami, for petitioners.
Allen Clements, Miami, Paul E. Speh and Burnis T. Coleman, Tallahassee, for respondents.
*583 ROBERTS, Justice.
The claimant, a laborer, sought workmen's compensation for a disability diagnosed as a coronary occlusion. The facts are that claimant had two mild, non-disabling premonitory attacks on Friday, December 5, 1958, and then suffered an acute heart attack on the following Tuesday while engaged in his usual employment of lifting, carrying and stacking cases of whiskey on a truck.
The deputy commissioner found that, "* * * as a result of his heart attack claimant was temporarily and totally disabled from date of said accident * * * and is entitled to workmen's compensation * * *". His award of compensation was appealed to the Commission, which found that there was "* * * ample competent substantial evidence to sustain the Deputy's finding that claimant's condition was causally related to his employment". The employer and carrier have brought this petition for writ of certiorari.
The issue may be stated as follows: Is a heart attack suffered by an employee, while at his usual work with its accustomed physical exertions, a compensable injury "by accident"? We think the question must be answered in the negative.
We are once again confronted with the problem of whether we have workmen's compensation, or whether we have health insurance. In General Properties Co. v. Greening, 154 Fla. 814, 18 So.2d 908, 911, we said, "This very valuable statute, [Chapter 440, Florida Statutes] while fulfilling a long standing public need, was not designed to take the place of general health and accident insurance. As was said by this court, * * * in * * * Protectu Awning Shutter Co. et al. v. Cline, 16 So.2d 342 * * *: `The purpose of the act is to shoulder on industry the expense incident to the hazards of industry; * * * and to ultimately pass on to the consumers of the products of industry such expense. Our act affords no relief for disease or physical ailment not produced by industry.'", and further, "Can the courts, in their sympathy for the unfortunate, question the wisdom and policy of the legislature in this regard? * * * The wisdom and policy of legislative acts is a matter for the legislature to determine."
Thus far the legislature has not seen fit to include as compensable a condition such as is here involved.
In Cleary Bros. Const. Co. v. Nobles, 156 Fla. 408, 23 So.2d 525, 526, deceased's wife brought a claim for compensation where decedent working on a hot day and after unloading cement sacks had suffered a heart attack and had fallen either dying or dead from a boxcar. The court stated: "It does not appear that deceased had been subjected to any unusual strain or overexertion uncommon to the type of work he was accustomed to doing. The fact that he collapsed at his work, even though the work was arduous, is not sufficient, within itself, to make out a case for recovery * * *". In a later case, Firestone Tire & Rubber Company v. Hudson, Fla.App., 112 So.2d 29, where the court denied compensation to a claimant who had suffered a heart attack while at his usual strenuous job of changing tires, the district court commented on whether we have workmen's compensation or health insurance and then found that there was no accident and the claimant had not been exposed to a danger not ordinarily risked by the public.
The only instance in which we find any support for claimant's contention is Standard Oil Co., Inc. v. Gay, Fla., 118 So.2d 212 where the claimant was watching and lifting cases of oil cans off a conveyor and thereafter suffered an attack of angina. Upon scrutiny, we conclude that the award of compensation was there made because there was no evidence or testimony to negate the affirmative testimony of the claimant and his witnesses.
In this case we fail to find there is competent evidence which accords with logic *584 and reason that claimant was subjected to overexertion uncommon to the type of work that he was accustomed to or that claimant's heart attack was an accident which arose "out of and in the course of employment"
Accordingly, certiorari is granted, the order reviewed is quashed and the cause is dismissed.
THOMAS, C.J., and THORNAL and O'CONNELL, JJ., concur.
DREW, J., dissents with opinion.
DREW, Justice (dissenting).
The majority opinion holds:
"* * * we fail to find there is competent evidence which accords with logic and reason that claimant was subjected to overexertion uncommon to the type of work that he was accustomed to or that claimant's heart attack was an accident which arose `out of and in the course of employment'."
The findings of the deputy come to us with a presumption of correctness.[1] The full commission in its review determined that there was competent substantial evidence to sustain the deputy's finding that claimant's condition was causally related to his employment. Not only did the full commission in reviewing the order of the deputy commissioner determine his findings of fact were supported by the evidence[2] but they also determined the order based thereon was correct under the law.[3] Under these conditions, I do not think we are empowered to overthrow the finding by substituting our view of the evidence for that of the deputy who found that the claimant's condition was causally related to the employment.[4] The effect of the majority opinion, in my judgment, is to substitute our analysis of the evidence for that of the deputy commissioner based on the record in which there is medical testimony to the effect that the claimant, while at work, was subjected to greater strain than usual because the co-employees of the claimant were pushing to the claimant cases of whiskey weighing approximately 40 pounds each to be loaded on *585 a truck as fast as they could be picked up and stacked. They would come on the conveyor four or five at a time to the extent of 175 cases in all. Neither these facts nor the fact that the heart attack occurred on the job were in dispute. The majority opinion, however, answers negatively the question:
"Is a heart attack suffered by an employee, while at his usual work with its accustomed physical exertions, a compensable injury `by accident'?"
We held in Fidelity and Casualty Co. v. Moore, Fla. 1940, 196 So. 495 that, for an injury to arise out of and in the course of employment, it must occur within the period of employment at a place where the injured employee may reasonably be and while he is reasonably fulfilling the duties of his employment and in Alan Wright Funeral Home, Inc. v. Simpson, Fla. 1957, 93 So.2d 375 that the test to determine whether an accident arises out of and in the course of the employment is the relationship of the event to the employment.
The evidentiary aspect of the severity of the exertion is not for this Court to decide as a factual issue since the record which supports the finding of fact of the deputy commissioner serves our purpose to determine if the proper evaluation was made of this testimony logically and reasonably. A comparison of the finding of the deputy commissioner and the transcript on this point bears out the sufficiency of that finding.
Accident has been defined by statute as:
"(19) `Accident' shall mean only an unexpected or unusual event or result, happening suddenly. A mental or nervous injury due to fright or excitement only or disability or death due to the accidental acceleration or aggravation of a venereal disease or of a disease due to the habitual use of alcohol or narcotic drugs, shall be deemed not to be an injury by accident arising out of the employment. Where a pre-existing disease is accelerated or aggravated by accident arising out of and in the course of the employment, only acceleration of death or the acceleration or aggravation of disability reasonably attributable to the accident shall be compensable." Section 440.02, Florida Statutes [1959] F.S.A.
and judicially construed in the case of Gray v. Employers Mutual Liability Insurance Co., Fla. 1953, 64 So.2d 650, 651 to the effect that "* * * [i]t is enough, then, if there is an unexpected result, even though there was no unexpected cause, such as a slip, fall or misstep, in order to constitute an `accident' within the meaning of the Workmen's Compensation Law; * * *."
The majority opinion, in stating the heart attack was not caused by accident, has by implication necessarily held that neither was there an unexpected cause giving rise to the heart attack nor was the attack per se an unexpected result. Assuming, arguendo, the reasoning is correct, the whole premise loses its validity with the examination of the medical evidence which reveals that the heart attack was the result of bipartite factors. One, the slow insidious development of atherosclerosis where the coronary artery circulation of an individual is no longer adequate for the heavy physical work which he may have been accustomed to performing most of his life without any difficulty; two, at one point of claimant's work history physical effort was so strenuous for the pre-existing physical condition that it gave rise to a particular specific identifiable severe physical strain which in turn was the precipitating and aggravating factor resulting in the acute myocardial infarction.
Stated in another fashion, the employer hired respondent accepting him in the physical condition in which he found him,[5] working him hard and without interruption for about two years, until such time as his *586 diseased condition became so aggravated by a specific strain or trauma that it culminated in the infarction. The requirement of accident by definition has been met just as surely as if the claimant had been afflicted with a bone weakening disease and had broken his arm lifting the whisky cases in combination with the pre-existing precipitating condition.
The specificity of the myocardial infarction is unquestioned as both medical specialists testified that before December 9, 1958, claimant had no such condition. However, Dr. Burtner testified it is very difficult to predict when a myocardial infarction will occur (just as it is difficult to predict when any accident will occur) but it depends on the "degree of effort" at his work.[6]
As we held in Standard Oil Company, Inc. v. Gay, Fla. 1960, 118 So.2d 212, 214:
"It is, of course, possible that the claimant could have sustained his attack of angina pectoris from exertion in other activities outside his employment. The record, however, does not reveal this to be the case."
So, in the instant case, the claimant could have suffered a non-industrially caused disability; the record, however, is devoid of any evidence except that at one particular point of the claimant's work he exerted such a great effort, the unexpected result of myocardial infarction arose. The cause was the specific last bit of effort by the employee to further the business of his employer, which in natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury and without which the injury would not have occurred. The distinguishing feature in this case is the lack of a previous history of myocardial infarctions and the specificity of the unexpected result due to the admitted exertion.
The heart may be damaged from many causes and, of course, at the end of every human life that vital organ ceases to function. Causes of "heart disease" or "heart failure" are not always ascertainable and it is seldom that there is entire agreement among the attending specialists in any given case. The courts, by reason of the very nature of the disease  if it is a disease  should look upon these cases with great caution. In doing so, however, we should not put such cases in a category by themselves and impose upon a claimant a burden of proof that he cannot meet. Such cases, I think, should be dealt with just the same as any other. There must be established facts showing that the resulting condition arose out of and in the course of employment. When this has been done with the amount and quality of evidence the law requires in compensation cases, the injury or death should be compensated. We should, I hold, be interested in the proof  not in the nature of the disease or ailment. That there are cases of heart failure or heart disease that are compensable, is now no longer a subject of dispute in this jurisdiction. If the rule is to be different in these cases, the Legislature should say so. We should not bring this about by the imposition of a burden of proof well nigh impossible to meet.
I, therefore, respectfully dissent and would deny certiorari and affirm the order *587 of the deputy and the full commission in this case.

ON REHEARING GRANTED
ROBERTS, Chief Justice.
Upon petition of the claimant, and to dispel the confusion apparently engendered by previous decisions of this court involving claims for compensation for a disability alleged to have resulted from the acceleration of a disability from a pre-existing heart disease by work-connected activities, rehearing was granted in this case.
The Deputy Commissioner found, as a fact, that the strenuous exertions of the claimant in this case, in picking up and stacking heavy cases of wine at top speed at the time complained of (because the conveyor belt was being loaded by two men and the claimant, alone, was required to unload) contributed substantially to the precipitation and bringing on of an acute heart attack sooner than it would otherwise have occurred through the normal progress of the pre-existing heart disease, coronary atherosclerosis, with which claimant was found, upon examination after the disabling attack, to be afflicted. The full commission affirmed under the "substantial evidence" rule. In our original opinion filed in this cause it was held, under the authority of Cleary Brothers Const. Co. v. Nobles, 1945, 156 Fla. 408, 23 So.2d 525, that an award of compensation was error in the absence of evidence that claimant "was subjected to overexertion uncommon to the type of work that he was accustomed to or that claimant's heart attack was an accident which arose `out of and in the course of employment'."
In the Cleary case, supra, 23 So.2d 525, the claimant suffered a fatal heart attack some thirty minutes after reporting for work and performing his usual duties of lifting heavy sacks of cement from a car onto a truck. It was revealed by an autopsy that the employee's heart was twice its normal size and there was competent medical testimony that "death might have occurred normally [from his pre-existing heart disease] at any time without regard to the type of activity he was pursuing." In holding that the evidence was insufficient to make out a case for recovery, this court noted that there was no work-connected "accident," such as a slip, fall or blow; that the employee had not been "sick, dizzy or overheated" prior to his collapse; and that it did not appear that he had been "subjected to any unusual strain or overexertion uncommon to the type of work he was accustomed to" at the time he suffered the fatal heart attack.
Our decision in the Cleary case was relied upon several times by this court in holding that compensation should be denied where there was no literal "accident," such as a slip, mis-step or fall, resulting in injury  or, as we sometimes said, "The injury cannot suffice for the accident." See Brooks-Scanlon v. Lee, Fla. 1950, 44 So.2d 650 (cerebral hemorrhage while lifting boards at a sawmill); Peterson v. City Commission, Fla. 1950, 44 So.2d 423 (left knee "snapped" when employee squatted to a deep-knee position); LeViness v. Mauer, Fla. 1951, 53 So.2d 113 (chest pains while working as a ditch digger, with a coronary thrombosis occurring several days later); and McNeill v. Thompson, Fla. 1951, 53 So.2d 868 (ruptured intervertebral disc while performing routine work of moving ladder.)
This line of cases  requiring a literal "accident" such as a slip or fall in order to recover compensation for a work-connected injury  is no longer authoritative in view of the decision in this court in Gray v. Employers Mut. Liability Ins. Co., Fla. 1953, 64 So.2d 650, receding from our previous decisions requiring such a literal "accident" as a precedent to a compensation award, and reaffirming the rule of Duff Hotel Co. v. Ficara, 150 Fla. 442, 7 So.2d 790, that "an unexpected injury received in the ordinary performance of a duty in the usual *588 manner is an injury `by accident' within the purview of the Workmen's Compensation Law, without the showing of anything fortuitous." Gray v. Employers Mut. Liability Ins. Co., supra.
Following this decision, the Legislature, then in session, promptly confirmed our interpretation of the Act by amending the definition of "accident" to read "an unexpected or unusual event or result, happening suddenly." Sec. 440.02(19), Fla. Stat., F.S.A. (Amendatory language is italicized.)
It is therefore settled beyond question in this state that an internal failure, such as a strained muscle, ruptured disc, "snapped" knee-cap, and the like, brought about by exertion in the performance of the regular or usual duties of the employment, may be found to be an injury "by accident," without the necessity of showing that such injury was preceded by some incident, such as a slip, fall or blow.
It is also settled law in this state that a disability which results from some exposure peculiar to and constituting a hazard of the employment, operating upon the physical condition of the employee at the time of such exposure, is a compensable injury "by accident" within the meaning of the Act, even though there is no literal "accident" such as a slip or fall. See Davis v. Artley Construction Co., 1944, 154 Fla. 481, 18 So.2d 255 (claimant became overheated while unloading a boxcar and suffered a cerebral hemorrhage); Alexander Orr, Jr., Inc. v. Florida Industrial Commission, 1937, 129 Fla. 369, 176 So. 172 (plumber died of sunstroke after being subjected to intense heat and using a blow-torch on hot August day); Czepial v. Krohne Roofing Co., Fla. 1957, 93 So.2d 84 (constant inhalation of dust and fumes aggravated or accelerated pre-existing tubercular condition).
In the so-called "exposure" cases, this court has stressed that, to entitle the employee to compensation, he must have been subjected to more than the ordinary hazards confronting people generally; but we have found no case in which it has been held that the ill effects of the exposure must occur suddenly and be immediately related to an identifiable incident. On the contrary, it was held in the Czepial case, supra, 93 So.2d 84, that "the fundamentally accidental nature of the injury is not altered by the fact that, instead of a single occurrence, it is the cumulative effect of the inhalation of dust and fumes to which a claimant is peculiarly susceptible that accelerates a claimant's pre-existing disability."
Having reiterated our position with reference to "internal failure" and "exposure" cases, we next consider the type of case presently before us which for lack of more descriptive terminology shall be referred to as "heart" cases.
When considered in the light of the so-called Bonnie Gray case, supra, 64 So.2d 650, and the amendment of the definition of "accident," made by the 1953 Legislature in accordance therewith, supra, we must conclude that the Cleary decision, supra, is no longer authoritative insofar as it may be interpreted to require a literal "accident," such as a slip or fall, as a condition precedent to obtaining workmen's compensation in any type case, including heart cases.
Accordingly, we hereby recede from our original opinion in this cause insofar as it may be interpreted as requiring a literal "accident," such as a slip, mis-step or fall, as a condition precedent to obtaining compensation for a disabling heart attack sustained under the circumstances shown by this record.
Facing the precise problem at hand wherein the claimant's activity of picking up and stacking heavy cases of wine was found to have contributed substantially to the precipitating or bringing on of an acute heart condition by accentuating the normal progress of the pre-existing arteriosclerosis, we adopt the following rule for heart cases: When disabling heart attacks are involved and where such heart conditions are *589 precipitated by work-connected exertion affecting a pre-existing non-disabling heart disease, said injuries are compensable only if the employee was at the time subject to unusual strain or over-exertion not routine to the type of work he was accustomed to performing.
Thus, if there is competent substantial medical testimony, consistent with logic and reason, that the strain and exertion of a specifically identified effort, over and above the routine of the job, combined with a pre-existing non-disabling heart disease to produce death or disability sooner than it would otherwise have occurred from the normal progression of the disease, the employee has a right to some compensation.
We specifically recede from any language in our prior decisions which may have contained doctrines contrary to those expressed herein, including certain language contained in Standard Oil Co. v. Gay, Fla. 1960, 118 So.2d 212.
One other matter has come to our attention upon reconsideration of this case. The Deputy Commissioner found that the exertion of the claimant in loading the truck precipitated his disabling heart attack sooner than it would otherwise have occurred through the normal progress of his pre-existing disease, coronary atherosclerosis, but did not apportion the award according to the contribution to the disability made by the pre-existing disease and that attributable to the work-connected injury, even though the medical testimony showed that the pre-existing disease contributed to the disabling heart attack.
Section 440.02(19), Fla. Stat., F.S.A. provides that:
"Where a pre-existing disease is accelerated or aggravated by accident arising out of and in the course of the employment, only acceleration of death or the acceleration or aggravation of disability reasonably attributable to the accident shall be compensable."
In heart attack cases where the claimant is entitled to compensation, this statute excludes any recovery for disability attributable in fact to the pre-existing condition and limits recovery solely to injury from the aggravation. See Padrick Chevrolet Company v. Crosby, Fla. 1954, 75 So.2d 762; Czepial v. Krohne Roofing Co., Fla. 1957, 93 So.2d 84; United Electric Co. v. Myers, Fla. 1961, 134 So.2d 7; and it requires apportionment of an award of compensation for a disabling heart attack suffered during the course of employment and resulting from work-connected exertion. See Jaquette Motor Co. v. Talley, Fla. 1961, 134 So.2d 238.
Accordingly, we adhere to our order granting certiorari and hereby quash the order of the Commission with directions that the cause be remanded to the Deputy Commissioner for reconsideration and further handling not inconsistent with this opinion.
It is so ordered.
THOMAS, DREW, THORNAL, O'CONNELL and HOBSON (Retired), JJ., and STURGIS, District Court Judge, concur.
NOTES
[1] United States Casualty v. Maryland Casualty, Fla. 1951, 55 So.2d 741.
[2] "Claimant was employed by Victor Wine & Liquor, Inc., and among his duties were those of loading and unloading cases or cartons of wine and whiskey. On December 9, 1958 claimant was engaged in loading whiskey on a truck owned by the employer and off a chute from the warehouse which terminated at the vehicle upon which claimant was loading the cases of whiskey. The cases were loaded at the warehouse and carried by the conveyor to the vehicle. Claimant had stacked some one hundred cases of whiskey when he developed an acute pain in his chest and was compelled to stop work. His condition, after being taken to the hospital, was diagnosed as infarction of the myocardium due to arteriosclerotic coronary thrombosis and cardiac arrest. The Deputy Commissioner found, inter alia, that claimant's condition was causally related to his employment. The employer and carrier have applied for a review, urging that there is no evidence to support such finding.

"We are of the opinion that there is ample competent substantial evidence to sustain the Deputy's finding that claimant's condition was causally related to his employment. Claimant suffered no symptoms until during the course of working, carrying and stacking cases of whiskey at top speed in order to keep up with two employees who were propelling cases to him on the conveyor's chute. The claimant testified that the manner in which the cases were coming to him caused him great strain and he was rushed on this particular day. Claimant further testified that his co-employees had never rolled the cases to him as fast as the day he suffered the coronary. Dr. Burtner's testimony is competent substantial testimony to support the finding of a causal connection between the claimant's employment and his condition."
[3] Naranja Rock Co., Inc. v. Dawal Farms, Inc., Fla. 1951, 74 So.2d 282.
[4] Four Branches, Inc. v. Oechsner, Fla. 1954, 73 So.2d 222.
[5] Davis v. Artley Construction Co., 1944, 154 Fla. 481, 18 So.2d 255.
[6] "A * * * He did have, undoubtedly, a pre-existing condition of atherosclerosis. In answer to your question, his disability is all due to the myocardial infarction and his disability is not directly due to the coronary atherosclerosis, although the fact of his having the coronary atherosclerosis made the myocardial infarction possible with the amount of work effort which he was doing. In other words, his coronary atherosclerosis before the myocardial infarction did not disable him, so far as we could tell, because there is no history of coronary insufficiency for any time prior to his heart attack, except on the one occasion on December 5th. We do know that he suddenly developed a myocardial infarction on December 9th and his disability is entirely due to the myocardial infarction prior to this time, December 5th and December 9th, there presumably was no disability before December 5th and December 9th, 1958."