400 So.2d 439 (1981)
Ramiro SILVERA, Petitioner,
v.
The MIAMI WHOLESALE GROCERY, INC., the Home Indemnity Company and the Industrial Relations Commission, Respondents.
No. 56685.
Supreme Court of Florida.
January 15, 1981.
Rehearing Denied July 28, 1981.
L. Barry Keyfetz of Keyfetz & Poses, Miami, for petitioner.
Barry A. Pemsler of Richard, Tharp & Pemsler, Miami, for respondents.
PER CURIAM.
Ramiro Silvera suffered a heart attack in the course of his employment with Miami Wholesale Grocery, Inc. His claim for workmen's compensation benefits was accepted by a Judge of Industrial Claims, but denied by the Industrial Relations Commission based upon our recent decision of Richards Department Store v. Donin, 365 So.2d 385 (Fla. 1978). Silvera asks us to hold that his heart attack occurred within the guidelines for compensability expressed in Richards, Richard E. Mosca & Co. v. Mosca, 362 So.2d 1340 (Fla. 1978), and Tintera v. Armour & Co., 362 So.2d 1344 (Fla. 1978).
The unchallenged facts with respect to Silvera's heart attack are set forth in the order of the Judge of Industrial Claims:
Claimant's customary work with the employer herein was that of a sales representative. The preceding day a ship, the Nopal Shore arrived in the port late. Ordinarily *440 ships arriving late would be loaded the following day. However, the ship had radioed in earlier that day indicating their arrival and expected departure early the following morning. Accordingly, claimant commenced filling their order initially involving loading cases of beer and liquor which he did not customarily do, but under the circumstances in order to fill the order was required to do. He thereafter journeyed to the port at approximately 5:00 o'clock P.M., waited approximately forty five minutes until the ship was completed docking and thereafter went on board. Although customarily the ship's crew is to do the loading of provisions, in this case upon docking the ship's crew went on shore and the loading was left to be accomplished by claimant and the steward. This particular ship had somewhat more personnel than the other ships serviced and it was accordingly a larger order. Although claimant in the past on occasion had helped with some loading, this was not a customary part of his work. He and the steward with some assistance from co-employee, Walter McComas loaded the provisions and liquor. The loading took several hours and thereafter McComas and claimant had to obtain for the Captain a special order to wit: a cooler. This particular Captain was on this occasion a difficult individual to deal with and very demanding. They obtained the cooler, waited sometime for return of the Captain in order to collect the money and that did not take place until approximately 11:00 o'clock P.M. Claimant thereafter returned to his place of employment to obtain his car, arrived home at approximately 12:00 midnight and thereafter after approximately four hours sleep was up the next morning in order to be at the Miami River at approximately 6:30 A.M.  7:00 o'clock A.M. to see what ships had arrived and needed any provisions. Claimant was exceptionally tired from the unusual ordeal the preceding night which because of the particular circumstances required that he worked very late in the evening which was not customary for him. After remaining approximately one half hour at the Miami River he proceeded to his place of employment and unfortunately had a flat tire. He had to change that, thereafter proceeded to his place of employment, learned that apparently the Captain was screaming about some portion of the order not filled, this particular account was one of the larger accounts and claimant felt his job was on the line if he did not please this individual. He proceeded out to the port in his exhausted state, was justifiably upset in that he had worked so hard and so long to please the Captain and the Captain nevertheless was dissatisfied with the services which was expressed to claimant by his general manager. Upon getting to the gang plank of the ship, McComas told claimant the Captain did not want to see him and was blaming claimant for alleged failure to complete the order. Immediately upon being advised thereof claimant according to his co-employee whose testimony I accept appeared very upset, got red in the face, claimant complained of chest pain, commenced feeling bad, attempted to make one other short stop at the Port, was feeling worse and got back to the employer's premises where he collapsed and was taken to the hospital. (emphasis added.)
The sole issue properly before us is whether Silvera's heart attack was "caused by the unusual strain or overexertion of a specifically identifiable effort not routine to the work the employee was accustomed to performing."[*] The Industrial Relations Commission held that it was not, presumably because there was no "specifically identifiable effort." Miami Wholesale Grocery argues for the correctness of the Commission's ruling, noting that in Tintera, Mosca and Richards, the claimants were denied compensation for the similar absence of a specifically identifiable physical effort.
The record indicates, as the underscored findings of the Judge of Industrial Claims *441 show, that loading activity preceding Silvera's attack was unusual to the performance of his duties for Miami Wholesale Grocery. The medical testimony presented for Silvera also identified emotional concerns, as opposed to physical effort, as a precipitating cause of Silvera's heart attack. This testimony, which was accepted by the Judge of Industrial Claims, also found a close nexus between the heart attack and Silvera's physical and emotional exertion, both causally and temporally.
The issue posed by these facts is whether Richards requires a precise correlation between physical effort and the onset of a heart injury, and whether an "effort" encompasses a combined physical and emotional sequence which is identifiable apart from normal work pressures. We hold that it does not require a precise temporal correlation, and that the specifically identifiable effort may be a causally related emotional and physical sequence which is independent of normal work pressures.
To be compensable, the "identifiable effort" associated with the onset of a heart attack must be job-related and must stem in part from some non-routine physical exertion. It may, however, involve psychological pressures closely associated with the physical activity. On this record, we conclude that the Commission misapplied our decisions in holding that Silvera's heart attack was not compensable as a matter of law. The award of the Judge of Industrial Claims was correct and should be reinstated.
It is so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON, ENGLAND and McDONALD, JJ., concur.
BOYD, J., dissents with an opinion.
ALDERMAN, J., dissents with an opinion.
BOYD, Justice, dissenting.
Once again we are faced with the question of whether compensability can be found upon the fact that the claimant's "myocardial infarction was precipitated by a series of unusual, non-routine, work-related, emotionally traumatic events and circumstances compressed within a specific period of time, rather than a single isolated event." Richards Department Store v. Donin, 365 So.2d 385, 386 (Fla. 1978). In Richards we specifically held that it cannot. In Richard E. Mosca & Co., Inc. v. Mosca, 362 So.2d 1340 (Fla. 1978), we explained why.
We have had a number of "heart" cases in which we determined what was or what was not an unusual and non-routine strain or exertion within the definition of Victor Wine [& Liquor, Inc. v. Beasley, 141 So.2d 581]. These decisions have involved either physical strain or exertion alone or physical strain or exertion in concert with emotional strain, but in no case have we held emotional strain alone to be sufficient. Emotional strain is too elusive a factor to be utilized, independent of any physical activity, in determining whether there is a causal connection between a heart attack or other internal failure of the cardiovascular system and the claimant's employment.
Id. at 1342.
This case is a good example of why this Court should adhere to the rule enunciated in Richards and Mosca. Claimant, a Panamanian national, had been under must stress in the eight years proceeding his heart attack. He was the deputy commander of all the armed forces of Panama before he was jailed in 1970. He escaped to the Canal Zone and sought political asylum in this country. For the next several years he attempted several business ventures which failed before going to work with Miami Wholesale Grocery. He was under a lot of stress due to fear of losing his job. Furthermore, he was overweight and a heavy smoker.
All of these factors could be related to claimant's suffering a heart attack. Since these factors cannot be independently measured, it is impossible to find a casual connection between claimant's work-related stress and his heart attack. This is precisely the reason for requiring that some work-related *442 physical activity precipitated the heart attack.
Although there is some evidence that claimant engaged in some unusual physical exertion, there is no medical testimony linking the physical activity to the heart attack. The claimant's medical expert, Dr. Lewis, testified that "the acute attack was precipitated by tremendous psychological pressure, anger and tension at the incident that happened as he was going out to the boat." On cross examination he was asked,
Q. In other words, you are basing your opinion on a psychological stress, doctor?
A. Yes, ... .
When asked if claimant's changing a tire would entail a little stress, the doctor replied:
Basically, he had no symptoms. If he would have had a strain on his heart, I would expect him to have an angina attack. That is, a transient, temporary chest pain which is an indication of not enough oxygen to his heart. From this physical stress of changing the tire, he did not develop symptoms and I would assume that he apparently went to work and did not feel anything bad at the time.
As Justice Alderman points out, the claimant testified he felt fine after loading the merchandise and after changing the flat tire. Therefore, there is no substantial competent evidence causally linking claimant's physical activity to his heart attack.
I would affirm the Industrial Relations Commission's order.
ALDERMAN, Justice, dissenting.
Consistent with our decision in Richards Department Store v. Donin, 365 So.2d 385 (Fla. 1978), the Industrial Relations Commission correctly reversed the Judge of Industrial Claims and denied Silvera's claim for workers' compensation for the heart attack he sustained. In reversing on the basis that the Judge of Industrial Claims had failed to focus on a specifically identifiable effort or event that caused the heart attack and on the basis that it could not isolate an identifiable event, the Commission relied on the following excerpt from Richards Department Store:
We find, consistent with our pronouncement in Victor Wine and its progeny, that, for a heart attack occurring during the course of employment to be compensable, it must have been caused by the unusual strain or overexertion of a specifically identifiable effort not routine to the work the employee was accustomed to performing.
365 So.2d at 386.
In Richards Department Store, we dismissed Donin's claim because the Judge of Industrial Claims had failed to find that strain and exertion of a specifically identifiable effort, over and above the routine of the job, caused the heart attack and because such a finding could not be supported by the record.
In the present case, the Judge of Industrial Claims based his finding of compensability on a series of events that took place during a two-day period of time. The Judge of Industrial Claims was unable to conclude from the record that any specifically identifiable effort had caused Silvera's heart attack. Furthermore, it does not appear from the record that any of the physical effort exerted by Silvera had caused the heart attack. He testified that after loading the merchandise, he felt fine and that he still felt fine the next morning even after changing a flat tire on his car on his way to the warehouse. After arriving at the warehouse, he was told that the captain of the ship was angry with him, and he then proceeded to the dock where he was informed that the captain did not want to see him anymore and that the captain was going to give the account to another salesman with another company. It was only after receiving this emotionally upsetting information that he first felt a pain in his chest. At the time he sustained the attack, he was not exerting any identifiable physical effort, and up until this point he had felt fine. Dr. Lewis, upon whose testimony the Judge of Industrial Claims relied, testified that it was the psychological pressure, anger, and tension upon receiving this disturbing information *443 that precipitated the attack. In Richard E. Mosca & Co., Inc. v. Mosca, 362 So.2d 1340 (Fla. 1978), we held that emotional strain alone is not the unusual strain or exertion within the definition of Victor Wine Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1962), and we explained:
Emotional strain is too elusive a factor to be utilized, independent of any physical activity, in determining whether there is a causal connection between a heart attack or other internal failure of the cardiovascular system and the claimant's employment.
362 So.2d 1342.
Accordingly, I find that the Commission's order complies with the essential requirements of the law and would deny certiorari.
NOTES
[*] Richards Dep't Store v. Donin, 365 So.2d 385, 386 (Fla. 1978).