392 So.2d 370 (1981)
Franklin ROUSE, Appellant,
v.
WYLDWOOD TROPICAL NURSERY and Ohio Casualty Insurance Company, Appellees.
No. SS-268.
District Court of Appeal of Florida, First District.
January 16, 1981.
*371 Howard L. Silverstein, of Silverstein & Hellman, P.A., Miami, for appellant.
Robert C. Pickford, of Parkhurst, Pickford, Ayres & Carlson, Ft. Lauderdale, for appellees.
SHIVERS, Judge.
Claimant, a laborer in his early twenties, appeals compensation order awarding him benefits based on finding of permanent partial disability of 3% to the body as a whole.
Appellant Franklin Rouse asserts the deputy commissioner erred: (1) by failing to rule on the issue of loss of wage-earning capacity when specific claim had been made therefor; (2) by failing to make an award based upon loss of wage-earning capacity; (3) by denying his motion to take a post-hearing deposition of claimant's primary treating physician; (4) by accepting the opinion of Dr. Rech, an orthopedic surgeon (who saw claimant only one time) over the other physicians and in failing to set forth the reasons.
We affirm in part and reverse and remand for further proceedings.
While working for appellee Wyldwood Tropical Nursery, claimant was injured in two compensable accidents. On July 21, 1978, he suffered a painful low back injury lifting a palm tree and on July 27, 1978, he reinjured his back digging a trench, causing back pain radiating into both legs. His employer took him to see Dr. James Smith, who treated him after both accidents. After the second accident Dr. Smith, who was not an orthopedic surgeon, hospitalized claimant for a week. An orthopedic surgeon, Dr. Morris, indicated that the claimant's progress was poor and that he showed persistent low back pain with radiation of the posterior thighs and hips.
On September 28, 1978, while Dr. Morris was "on sabbatical" his associate, Dr. Melvin Rech, examined Rouse once. Rouse complained of continued low back pain with radiation into his left side and thigh and occasional numbness. Dr. Rech found September 28, 1978, as the date of maximum medical improvement. He indicated that claimant could return to his normal job duties with 0% permanent disability, although Dr. Rech felt there appeared to be a resolving lumbosacral strain and sprain.
Claimant attempted to return to work, but the pain was apparently so severe that he could not continue. His original treating physician, Dr. Smith, saw the claimant again on October 12, 1978. He disagreed with Dr. Rech's diagnosis, finding Rouse's condition to be more severe. Dr. Smith reported that claimant had not reached maximum medical improvement and that Rouse would probably end up with a 10% permanent partial disability rating.
*372 Dr. Bret Lusskin, another orthopedic surgeon, saw claimant on December 12, 1978, and on May 25, 1979. Dr. Lusskin assigned claimant a rating of 10% permanent partial disability of the body as a whole.
At the hearing on July 11, 1979, Dr. Smith, who had been subpoenaed, did not appear. He had reportedly seen claimant again in June 1979. Rouse's attorney reported that Dr. Smith notified him only the day preceding the hearing that he could not be at the hearing as he was the only doctor available to take care of the clinic. Claimant moved for an order allowing a post-hearing deposition, but the deputy refused. The deputy stated that he would favor the testimony of expert orthopedic surgeons over a general practitioner for this type injury and saw no reason to delay the hearing or to delay the decision for a post-hearing deposition.
Three months later, in October 1979, the deputy commissioner found:
.....
3. Based on the deposition testimony of Dr. Rech, I find the date of maximum medical improvement to be September 28, 1978.
4. Based on the combined testimony of all of the doctors and the Claimant, I find that the Claimant has sustained a three (3%) percent permanent partial disability to the body as a whole.
Claimant argues that the deputy should have permitted the post-hearing deposition of Dr. Smith. Because of the great discretion vested in the trial court to determine whether to accept a post-hearing deposition when a witness absents himself from a judicial proceeding, we find the deputy did not abuse his discretion. See Dickson v. Feiner's Organization, Inc., 155 So.2d 703 (Fla. 2d DCA 1963) reh. denied. A deputy Commissioner may give greater weight to the opinions of one medical expert over another provided some reason is given, if there are conflicting opinions. Pierce v. Piper Aircraft Corp., 279 So.2d 281 (Fla. 1973) reh. denied. Although the post-trial deposition was not in evidence, the deputy's indication that he would accord more weight to testimony or depositions of orthopedic surgeons than of general practitioners lays an adequate foundation on which to rule there was not a sufficient abuse of discretion to cause us to overrule the deputy's decision not to permit a post-hearing deposition. In this close point on appeal, we affirm the deputy's decision not to allow the post-hearing deposition. It appears, though, that the deposition of Dr. Smith who saw claimant following both accidents and after Dr. Rech, could have been scheduled in July or August as the opinion was not released until October.
The second issue involves the accepting of Dr. Rech's findings to the exclusion of the other medical findings. The deputy found maximum medical improvement to have occurred on September 28, 1978, based solely on Dr. Rech's deposition in contrast to the findings of the other doctors including Dr. Lusskin, the other orthopedist. Dr. Lusskin found that maximum medical improvement did not occur until May 25, 1979.
The deputy found a 3% disability rating. The testimony in the records is to a 0% or a 10% disability rating, the 3% rating being closer to Dr. Rech's findings.
The standard for testing the adequacy of findings of fact in a workers' compensation case was set out in Pierce v. Piper Aircraft Corp., supra, in which the court indicated that
... where the testimony of two or more expert witnesses of comparable qualification are in direct conflict, it will be helpful ... if some explanation is given as to why the testimony of one is accepted and the other is rejected.
This statement was slightly clarified by requiring more specific findings with adequate references to the record in the face of factual disputes in Vargas v. Americana of Bal Harbour, 345 So.2d 1052, 1054 (Fla. 1976) reh. denied (1977). The standard was reaffirmed in Buro v. Dino's Southland Meats, 354 So.2d 874, 877 (Fla. 1978) in which the Supreme Court found it was not "essential" for a deputy commissioner to explain precisely why he accepts the testimony *373 of one doctor and rejects that of another.
The dividing line between the point at which it would be merely "helpful" to have an explanation as to why one expert is favored over another and when it is mandatory arises when: (1) the reason for the finding in the order is not apparent from the record, Lakeland Ford, Inc. v. Harrelson, IRC Order 2-3885 (August 10, 1979), or (2) it might appear that the deputy commissioner has overlooked or ignored the testimony of a witness. Jefferson Stores, Inc. v. Rosenfeld, 386 So.2d 865 (Fla. 1st DCA 1980).
In this case, we do not find it apparent from the record why Dr. Rech's assigned September 28, 1978, date of maximum medical improvement was favored over the other doctors, who saw claimant Rouse after Dr. Rech and who indicated that Rouse did not achieve maximum medical improvement during 1978.
We have no way of knowing how the deputy arrived at the 3% disability rating he assigned. The medical experts testified either a 10% or 0% rating was proper. While the deputy commissioner has the discretion to accept lay testimony over a medical expert's and to arrive at an impairment rating in excess of that of a medical expert, the testimony of the claimant at the hearing did not establish a 3% disability. As in Glades County Sugar Growers & Employers Insurance of Wausau v. Gonzales, 388 So.2d 333, 335 (Fla. 1st DCA 1980), the lack of reasoning makes the order "so deficient as to impede review when measured against the record facts."
It would appear that the medical findings run counter to the manifest weight of the medical testimony, but we will await the deputy's clarification of his findings of fact before passing judgment.
The third and fourth issues relate to whether the deputy should have ruled on loss of wage-earning capacity when specific claim therefor has been made and whether the deputy erred in failing to make an award based upon loss of wage-earning capacity. Here, claim was made for permanent partial disability benefits based upon either anatomic impairment or loss of wage-earning capacity. The deputy found a 3% permanent partial disability of the body as a whole. The last sentence in Section 440.15(3)(u), Florida Statutes 1978, defines "disability" in that paragraph to mean "either physical impairment" or "diminution of wage-earning capacity, whichever is greater." (Emphasis added.) The record contains evidence of both. A finding must be made declaring the disability to be based on either one or the other. Suez Motel v. Brouwer, 388 So.2d 627 (Fla. 1st DCA 1980).
AFFIRMED in part and REVERSED in part and remanded for further proceedings not inconsistent with this opinion.
ERVIN and SMITH, JJ., concur.