408 So.2d 787 (1982)
John R. McCALL, Appellant,
v.
DICK BURNS, INC. and Federal Insurance Company, Appellees.
No. YY-494.
District Court of Appeal of Florida, First District.
January 14, 1982.
*788 Emil Jaczynski, Fort Lauderdale, for appellant.
Frank M. Hamilton of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellees.
ERVIN, Judge.
Appellant John R. McCall suffered a myocardial infarction (heart attack) while on the job, but his workmen's compensation claim[1] was found to be noncompensable, because the heart attack was the result of a pre-existing heart disease and not due to an unusual, non-routine strain or over-exertion. The deputy commissioner's order also appears to suggest that there was not a precise temporal correlation between the time of McCall's exertion and his disabling heart attack. We reverse the determination that the heart attack was not compensable and remand this case for further proceedings.
The record indicates that fifty-five year old John McCall had worked in construction oriented jobs most of his life, including among other things, as a welder and a master mechanic. Although McCall and his personal physician testified that he had never suffered from a known previous heart condition, post-injury examinations by other doctors indicated that McCall had been subject to coronary artery disease. The disease was non-disabling, but it was becoming progressively worse, causing his arteries to become blocked.
Approximately eight months before suffering his heart attack, McCall was successful in obtaining work with appellee Dick Burns, Inc., a construction equipment company. McCall testified that he was hired as a master mechanic and equipment supervisor and that his actual duties included supervision of company mechanics and equipment *789 damage assessment.[2] According to the testimony of one of the people that he supervised, his normal duties apparently involved hard work, but he clearly was more of a supervisor than a laborer.[3]
On Tuesday, February 13, 1979, McCall and a crew of workers commenced work on a large outrigger that extended from a crane for the purpose of support. The outrigger had a 3.5 inch diameter bolt with a hole in it. The bolt was frozen, and McCall ordered his crew to place a bar through the hole for leverage. After using a lubricant to loosen the bolt and a sledge hammer on the leverage bar, the bolt still wouldn't move. McCall told his crew to attempt loosening the bolt by hand with the bar.
The workers strained so hard on the bolt that one of them stood aside after severely straining his back. At this point McCall assisted his crew by lifting up and down on the bolt with a sudden jerking action for ten minutes. Suddenly, McCall felt a ripping pain across his chest, lasting ten minutes. McCall testified that he had never engaged in this type of work or such strenuous work.
Although the pain subsided, he continued having burning, aching pains for the rest of the day. His pains continued on Wednesday and Thursday morning. He went home Thursday during the noon hour and then drove his pick-up truck to Miami on business. By the time that he reached his destination he was in such pain that he couldn't even get out of the truck. Subsequently he was taken home and then to his family doctor at the hospital where he remained for twelve days.
The deposition testimony of three doctors was presented to the deputy. The deputy cited testimony by McCall's personal physician, Dr. Anthony Vento, who diagnosed an acute inferior wall myocardial infarction with a secondary congestive heart failure, all of which stemmed from the pre-existing arteriosclerotic heart disease. Dr. Henry Cooper, a heart specialist, agreed, finding a relatively infinitesimal inferior wall infarction. He believed that the claimant suffered no permanent disability due to the infarction. Dr. Cooper's testimony discounted any relationship between McCall's physical activities and the infarction. He noted that the pain suffered by McCall was angina caused by stress, but it was merely temporary in nature, subsiding within a few minutes after the stress was halted.
On the other hand, the deputy also cited the findings of Dr. Orlando Maytin, another heart specialist. He indicated that the heart disease was the partial cause of the infarction. However, he noted that unusual stress could have triggered the infarction. Based on a hypothetical question and within reasonable medical probability he stated that the heavy lifting actions could easily have triggered McCall's infarction. The testimony of the medical experts seems hopelessly in conflict, and while the deputy gave a comprehensive written recitation of the doctor's testimony, it appears he did not *790 make specific findings as to whether McCall's physical exertion medically caused his problems.
The deputy did find that the heart attack was not compensable, primarily based on the testimony of the claimant and that of one of the claimant's laborers, Gordon DeVore. Relying on DeVore's testimony the deputy commissioner found that McCall always worked on heavy equipment which is heavy work, and therefore, it was difficult to view McCall's exertion as unusual. The deputy also determined that the myocardial infarction occurred at a time when McCall wasn't performing any heavy duties. These findings all seem to relate to the lack of the existence of a legal causal connection between McCall's work and heart attack.
That both a medical and legal cause for claimant's heart attack must be established and supported by competent substantial evidence seems apparent from a review of numerous Supreme Court decisions on the subject of compensable heart ailments.[4] This is essential in cases such as the one before us because of evidence of the prior weakness of McCall's heart due to the non-disabling heart disease.
The reasoning behind the requirement of both a legal and medical causation analysis in heart cases, as well as in pre-existing disease cases, stems in good part from the view that the natural progress of a disease might precipitate a collapse during working hours. In such cases absent proof of some identifiable effort on the job which within reasonable medical probability can be said to have a causal connection to the collapse, there arises serious doubt that the collapse was either accidental or causally related to the employment. See 1B Larson, Workmen's Compensation Law § 38.83 at 7-257 to 7-261 (1980).
Consequently, the underpinning of compensable heart attacks in the Florida workmen's compensation setting is that the heart attack must stem, at least in part, from some specifically identifiable physical activity. Silvera v. Miami Wholesale Grocery Company, 400 So.2d 439, 441 (Fla. 1981).
However, not any physical activity is sufficient to sustain a finding of compensability, especially in cases involving a pre-existing heart disease.
When disabling heart attacks are involved and where such heart conditions are precipitated by work-connected exertion affecting a pre-existing non-disabling heart disease, said injuries are compensable only if the employee was at the time subject to unusual strain or over-exertion not routine to the type of work he was accustomed to performing.
Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581, 588-589 (Fla. 1962). This constitutes the test for legal causation. Proof of this point is geared toward satisfying the requirement that the injury is one "arising out of the employment." § 440.09(1) Fla. Stat.; Larson, supra, at 7-235.
The Victor Wine court also noted that the strain or over-exertion must be related to the collapse by competent substantial medical testimony. Victor Wine, supra, at 589. Plainly, evidence of medical causation is required. Unfortunately, the requirement of proof of both medical and legal causes has become so intertwined over the years that it becomes easy to lose sight of one of the tests. Accord: Larson, supra, at 7-235. In fact a review of the heart cases in Florida indicates that an exhaustive amount of attention has been given to the legal causation test, but little has been done to focus attention on the medical causation test. Most likely, this may be attributed to the *791 controversial nature of the legal causation requirement.
In analyzing the legal/medical causation dichotomy it has been suggested that the starting point is with the legal causation test. Market Foods Distributors, Inc. v. Levenson, 383 So.2d 726, 727 (Fla. 1st DCA 1980), petition for review denied, Levenson v. Market Foods Distributor, 405 So.2d 974 (Fla. 1981). Thus, the analysis centers on whether the over-exertion is one that is unusual or non-routine in reference to the employee's regular job duties. "In determining whether a particular activity is not routine, we must look to the duty performed by the employee himself rather than by his fellow workers." Richards Department Store v. Donin, 365 So.2d 385, 386 (Fla. 1978).
Applying the Victor Wine test for legal causation to the record in this case, we find a lack of competent substantial evidence to support the deputy's finding that McCall did not perform an unusual, non-routine exertion. McCall's work appears primarily supervisory in nature. Even if McCall performed stressful work on heavy equipment, that does not detract from the fact that McCall testified that he had never strained himself so hard on the job and possibly during his entire life. This factor seems entitled to at least some weight in light of the fact that one of McCall's laborers may have injured his back by performing the same work. The record demonstrates that the strain and over-exertion that McCall suffered in attempting to jerk the outrigger bolt free was both unusual and non-routine.
The deputy's order also states that the infarction occurred at a time when McCall was not performing any heavy work. Presumably, this refers to the pick-up truck drive to Miami. This suggests that there must be a precise temporal correlation between the physical exertion and McCall's heart attack. Unfortunately, the deputy's decision preceded, and therefore did not have the benefit of, the Supreme Court's recent decision in Silvera, supra, at 441, in which it was determined that a precise temporal correlation between an unusual, non-routine over-exertion and the onset of a heart injury was not a necessary predicate to a determination of compensability. However, it seems apparent that, while no precise temporal correlation is required, there must be a nexus between the exertion and heart attack.
In Silvera, a sales representative strained himself one evening loading a ship. Early the next morning he was subjected to some emotional torment. Sometime thereafter, he suffered a heart attack. McCall's situation is factually distinguishable in that he suffered immediate pains from over-exertion on the job in a non-routine activity; that this was the first time in his life that he had ever suffered these problems; that he suffered continuous, intermittent periods of pains in the chest and throat, until his final collapse two days later.
However, in both Silvera and the case at bar a nexus may be found in the sequence of events and proximity in time between the non-routine over-exertion and the heart attack. At the opposite end of the spectrum is City of Miami v. Rosenberg, 396 So.2d 163 (Fla. 1981), in which the Supreme Court found that claimant's heart attack was not compensable. The claimant had no previous symptoms of a heart condition, but he apparently was the subject of a pre-existing, non-disabling arteriosclerotic heart disease.
Rosenberg was subjected to a great amount of emotional torment during a six-month period which culminated in an acute myocardial infarction one weekend. The only specifically identifiable instance of unusual stress or over-exertion apparent from a close reading of the case is that the claimant moved some heavy boxes at some point during the six-month period of stress preceding his heart attack. Compensability was rejected in part based on the lack of a temporal relationship between the physical activity and the heart attack. Id. at 165.
It must also be shown that there is a causal relationship between the strain or over-exertion and the heart attack within *792 reasonable medical probability. Reasonable medical probability may be established by either medical or lay testimony. Scotty's Inc. v. Jones, 393 So.2d 657, 659 (Fla. 1st DCA 1981); Deck's, Inc. of Florida v. Wright, 389 So.2d 1074, 1076 (Fla. 1st DCA 1980). Although lay testimony cannot be used to establish a causal relationship within reasonable medical probability as to conditions and symptoms that are not readily observable, it is of probative value in establishing the sequence of events, actual inability or ability to perform work, pain, and similar factors within the actual knowledge and sensory experience of the claimant. Id. Of course, it is obvious that medical testimony by a qualified doctor is probative of the existence or absence of a causal relationship within reasonable medical probability.
In this case evidence of the sequence of events in attempting to loosen the bolt resulting in immediate pains and, therefore, in a continuous stream of intermittent pain culminating in the myocardial infarction was supplied by the claimant's testimony as well as that of his co-worker, Gordon DeVore. When given a hypothetical situation that was somewhat similar to the stress involved in lifting up and down on the bar to loosen the bolt, Dr. Maytin indicated that stress of this nature could have triggered McCall's chest pains and myocardial infarction. In our view this constitutes sufficient evidence of medical causation. However, the deputy could have relied on Dr. Cooper's testimony. He made no finding on medical causal connection.
Questions as to the credibility of witnesses and conflicts in the evidence are usually for the deputy commissioner to resolve, especially in cases of expert testimony. Jefferson Stores, Inc. v. Rosenfeld, 386 So.2d 865 at 865-866 (Fla. 1st DCA 1980); see also Glades County Sugar Growers v. Gonzales, 388 So.2d 333, 335 (Fla. 1st DCA 1980). As explained in Rouse v. Wyldwood Tropical Nursery, 392 So.2d 370, 372-373 (Fla. 1st DCA 1981), it would be helpful if the deputy would explain why one expert's testimony is accepted over that of another. In some cases it is essential that the deputy do so. Id. at 373.
However, in this case the deputy did not make a finding as to the acceptance or rejection of the medical testimony. In fact there is no finding as to the issue of medical causation, apparently because of the deputy's findings of a lack of legal causation which bans compensation. Due to the fact that we have reversed the deputy's findings, which in essence found no legal causal connection, the heart attack could be compensable based on the pains and sequence of events attested to by the appellant and Dr. Maytin's testimony. Remand of this case is required so that the deputy may make a finding as to the medical causation issue.
Consequently, if the deputy accepts that medical evidence necessary to establish a causal connection between the accident and heart attack, and rejects Dr. Cooper's testimony, he will need to apportion out any permanent disability not reasonably attributable to McCall's accident. Compare Victor Wine, supra, at 589. Compensability for temporary disability and medical benefits is, of course, not subject to the apportionment statute. § 440.02(18), Fla. Stat. (Supp. 1978).[5] We, therefore, REVERSE and REMAND for further proceedings not inconsistent with this decision.
WENTWORTH and JOANOS, JJ., concur.
NOTES
[1] McCall's injury occurred in February, 1979. Since the statutory law in effect at the time of the accident prevails, this claim is governed by the "Workmen's Compensation Law" in effect in late 1978 and early 1979. Kerce v. Coca-Cola Company  Foods Division, 389 So.2d 1177 at 1177 n. 1 (Fla. 1980).
[2] [Mr. Jaczynski] What did you do for Dick Burns?
A. [McCall] I was hired as the master mechanic and equipment supervisor.
Q. What duties did that involve?
A. Assessing damage for equipment, mechanical problems and regular maintenance, supervising the mechanics, also overlooking the operation of equipment in the field as to operators' qualifications, machine conditions and so forth.
(T.R. 23)
[3] [Mr. Jaczynski] From your observation, what were Mr. McCall's duties?
A. [Gordon DeVore] He was in charge of the mechanics. He was head mechanic.
Q. What did his duties involve in relationship to stress, strain and labor?
A. It was an engineering outfit. We worked with some heavy equipment. He had laborers, but it was kind of an off-again-on-again situation whether he had them or not. He had some big equipment we were working on. We're talking about cranes and bulldozers and stuff, you know.
Q. From your observation, did Mr. McCall continuously do any heavy type of labor with that equipment?
A. Just about anything you do with them is heavy labor, you know. He continuously  I wouldn't say he did it continuously, no. He was more in the lines of telling the other people what to do.
(T.R. 11) (Emphasis added).
[4] See, e.g., Silvera v. Miami Wholesale Grocery, Inc., 400 So.2d 439, 442 (Fla. 1981) (Boyd, J., dissenting) (cites lack of medical testimony regarding causation); City of Miami v. Rosenberg, 396 So.2d 163, 165 (Fla. 1981) (cites lack of medical evidence to support causal relationship); Croft v. Pinkerton-Hayes Lumber Co., 386 So.2d 535 (Fla. 1980) (involving a stroke and finding compensability based on medical testimony relating stroke to job over-exertion); Richards Dept. Store v. Donin, 365 So.2d 385, 387 (Fla. 1978) (citing rule of law in Victor Wine & Liquor, Inc. v. Beasley, infra); and Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581, 588-589 (Fla. 1962).
[5] Section 440.02(18), Florida Statutes (Supp. 1978), states in relevant part:

Where a pre-existing disease or anomaly is accelerated or aggravated by accident arising out of and in the course of employment, only ... the acceleration or aggravation of disability reasonably attributable to the accident shall be compensable with respect to permanent disability or death. Compensation for temporary disability and medical benefits provided by this chapter shall not be subject to apportionment under this subsection.