540 So.2d 893 (1989)
Eleanor STINSON, Appellant,
v.
STROH'S BREWING COMPANY, and Aetna Casualty & Surety Company, Appellees.
No. 87-1831.
District Court of Appeal of Florida, First District.
March 28, 1989.
Peyton T. Jordan, Jr., Tampa, for appellant.
Joseph Murphy, Tampa, for appellees.
PER CURIAM.
Eleanor Stinson, the surviving widow of a deceased worker, appeals an order of the deputy commissioner (deputy) denying medical expenses, temporary total disability, and death benefits as a result of her husband's death caused by a heart attack. We affirm.
*894 Although the claimant has raised three issues on appeal, this is another case where the sole issue is whether there is competent substantial evidence to support the deputy's order. The three issues raised by the claimant are whether the deputy erred in finding that the work performed by the deceased prior to his heart attack was a usual task in his employment, whether the deputy erred in finding that there was inadequate proof to support the factual foundation of the hypothetical questions asked of the expert witnesses, and whether the deputy erred in finding the testimony of the treating physicians insufficient to show a causal relationship between the employee's work activities prior to July 16, 1983, and his death on September 19, 1985.
The deputy denied the claim for death benefits by the surviving widow finding that the deceased was not subjected to unusual strain or overexertion under the Victor Wine rule;[1] that the work he performed was part of his usual duties as a maintenance mechanic which he and other mechanics had performed in the past and would be expected to perform in the future; that the malfunction of gear boxes was an expected, recurring problem in the brewery; and that the deceased employee, as maintenance mechanic, was expected to perform the necessary repairs as a usual task of his employment. Based on these findings the deputy concluded the requirements of Victor Wine were not satisfied. The deputy also found there was no causal relationship between the initial accident of July 16, 1983 and claimant's eventual death, and further found that there was inadequate proof to support the factual foundation of the hypothetical questions asked of the expert witnesses, thereby making those expert opinions insufficient to support the claim. There is ample competent substantial evidence to support these findings of fact and the deputy's conclusion the claim was not compensable. In this case, as is true in almost every other similar competent substantial evidence case, there are some conflicts in the evidence and some evidence that would support a finding that the claim is compensable, but as this court has said many, many times, that is not the issue before the court on appeal. The proper issue is whether there is any competent substantial evidence to support the deputy's order. There is, and therefore, we affirm.
BOOTH and THOMPSON, JJ., concur.
ERVIN, J., dissents.
ERVIN, Judge, dissenting.
I respectfully dissent, and would remand the cause for additional findings of fact.
The basis for this claim originated in July 1983 when Ralph Stinson, a maintenance mechanic employed by Stroh's Brewing Company, was stricken with a heart attack. Stinson's duties included servicing can lines, which necessarily required changing gear boxes approximately once every six months. On July 15, 1983, the day before his first heart attack, Stinson was changing over a can line  an all-day project. The line on which he was working was new to the plant, having been brought in by Stroh's when it recently bought out Schiltz Brewing Company and took over the plant. Because the can line was new to the plant, neither Stinson nor any other mechanic in the plant had previously changed the line over or replaced gear boxes in the line. Under normal circumstances, three men would be assigned to this kind of project; the plant, however, was short-handed on this particular occasion and only Stinson and one other mechanic were assigned to the job.
The evidence reflects that the task of changing over a line and changing a gear box is hard, strenuous work. It requires the mechanic to lie on his back underneath the machinery while working on the line above him. It necessarily involves stooping and straining. On this particular day in July, the temperature was unusually hot in the plant  both Stinson and the other mechanic present were drenched with sweat. In addition, the line on which they were working was located near a pasteurizing *895 machine which generates substantial heat. To further complicate this particular task, the wrong gear box had been given to Stinson for installation. This mistake was not discovered until Stinson had completed installation of the wrong gear box. Consequently, Stinson had to remove the gear box he had just installed and replace it with a second gear box. The change-over was successfully completed, and Stinson left the employer's premises at his usual time.
Upon Stinson's arrival at home that evening, his wife testified that he was "awful haggard looking, grayish looking and he had a kind of nausea." The following day, a Saturday, Stinson complained of not feeling well and rested the entire day. Shortly after 6:00 p.m., Stinson suffered a heart attack. He was admitted to the hospital with a diagnosis of myocardial infarction and coma. He recovered sufficiently to return home; however, he required nursing care in his home and was never again able to return to work. He subsequently suffered a cardiac arrest on September 19, 1985, resulting in his death.
The claim initially filed on July 17, 1985, before Stinson's death, sought payment of medical expenses, temporary total disability (TTD) benefits, interest, penalties and attorney's fees. Upon Stinson's death, his wife filed an amended claim for death benefits. The employer/carrier controverted both claims, asserting that neither cardiovascular accident was work-related. The deputy commissioner (DC) subsequently determined that the initial heart attack did not result from Stinson being subjected to unusual strain or overexertion under the Victor Wine test.[1] Additionally, the DC found that there was inadequate proof to support the factual foundation of the hypothetical questions asked of the doctors and that the medical testimony was inadequate to support a finding of medical causation. Because in my judgment the DC erred in his determination of no legal causation and inadequately considered both medical and lay testimony in deciding a lack of medical causation, I would reverse and remand for further proceedings consistent with this opinion.
The legal test imposed by Victor Wine requires that before compensation may be awarded for a heart attack suffered by an employee, the employee must have been subjected to overexertion uncommon to the type of work with which he or she is accustomed, or the heart attack must have been an accident arising from the employment. See also Dean Jaye Constr. v. Johnson, 486 So.2d 664 (Fla. 1st DCA), review denied, 494 So.2d 1150 (1986) (competent, substantial evidence supported finding that exposure to urethane fumes was contributing cause of employee's heart attack); McCall v. Dick Burns, Inc., 408 So.2d 787 (Fla. 1st DCA 1982) (record demonstrated that strain and overexertion employee suffered in attempting to jerk frozen bolt free was both unusual and nonroutine).
The crucial question in this case is whether the employee was performing a routine task using normal exertion. I cannot agree that there was competent and substantial evidence supporting the DC's determination that Stinson's activity constituted a routine task of his employment. While changing over can lines was clearly an obligation required to be performed by maintenance mechanics at the brewery, the undisputed evidence revealed that such activity was generally required only once every six months. In my judgment it is impossible to conclude that a job required to be performed only twice over the course of a year constitutes "routine" activity.[2]See also Warman v. Metropolitan Dade *896 County, 228 So.2d 908 (Fla. 1969) (bulldozer operator who suffered a heart attack after approximately ten minutes of shoveling was involved in activity constituting unusual exertion where evidence revealed that employee used the shovel carried on the grader only once a year).
Because changing the gear box was not routine to Stinson's employment, coupled with the facts that this particular can line had never been worked on before and that the plant was shorthanded on that day, I cannot agree that there was an insufficient connection between Stinson's industrial activity and his heart attacks, which failed to satisfy the legal causation test of Victor Wine.
If it is correctly decided  as I think it must  that the test for legal causation was satisfied, then it must next be decided whether there is competent, substantial evidence supporting a finding of medical causation. See McCall, 408 So.2d at 790. The DC, having erroneously decided that legal causation did not exist, may not have sufficiently considered the medical testimony to determine the issue of medical causation. While it is true that the hypothetical questions posed to the doctors were not supported by an adequate factual basis, the DC made no mention of the medical testimony supporting the claim apart from the hypothetical questions. Additionally, the DC apparently gave no credit to Mrs. Stinson's testimony regarding her husband's appearance when he returned home from work in determining the medical causation issue. Medical causation can of course be established by medical or lay testimony, Daytona Linen Serv. v. Davis, 454 So.2d 46, 47 (Fla. 1st DCA 1984); McCall, 408 So.2d at 791-92; and it is error to reject the testimony of a claimant's witness without an explanation of how his or her credibility was tarnished. Calleyro v. Mt. Sinai Hosp., 504 So.2d 1336, 1337 (Fla. 1st DCA), review denied, 513 So.2d 1062 (1987).
Because there is a nexus upon which legal causation is established, I would reverse and remand for further proceedings, with directions to the DC to make further findings on the issue of medical causation, which would involve reconsideration of the medical testimony apart from the hypothetical questions, and, if necessary, the taking of additional evidence.
NOTES
[1] Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1961).
[1] This test refers to the case of Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1961), wherein the Florida Supreme Court denied benefits under the Workers' Compensation Act because it found no "competent evidence which accords with logic and reason that claimant was subjected to overexertion uncommon to the type of work that he was accustomed to or that the claimant's heart attack was an accident which arose `out of and in the course of employment.'" Id. at 583-84 (emphasis added).
[2] The American Heritage Dictionary of the English Language 1131 (1979) defines "routine" as "[a] prescribed and detailed course of action to be followed regularly; a standard procedure" or "[a] set of customary and often mechanically performed procedures or activities."