559 So.2d 258 (1990)
Walter WALKER, Appellant,
v.
FRIENDLY VILLAGE OF BREVARD and United Self Insured Services, Appellees.
No. 89-517.
District Court of Appeal of Florida, First District.
March 21, 1990.
Rehearing Denied April 23, 1990.
Daniel P. Faherty of Cianfrogna, Telfer & Reda, P.A., Titusville, for appellant.
Jamie H. McWilliams of Langston, Hess & Daniels, P.A., Maitland, for appellees.
*259 NIMMONS, Judge.
Claimant seeks review of a workers' compensation order denying the compensability of his claim for benefits. We reverse.
On October 27, 1987, claimant sustained a heart attack while he was working for his employer. A claim for benefits was filed in January 1988. The hearing conducted on the claim was restricted to the issue of compensability, i.e., whether claimant sustained an accident in the course and scope of his employment.
At the hearing, the 56-year-old claimant testified that he had returned to the work force in August 1987 after being voluntarily unemployed since August 1985, when he left employment as a construction superintendent in Orlando, Florida. According to claimant, this two-year hiatus was due to his high blood pressure. After conferring with his treating physician, claimant applied for a job doing maintenance work at Washington Square, the employer herein, which operated a nursing home facility. Claimant testified that his doctor did not place any restrictions on his work activities.
According to claimant, he interviewed for the maintenance job with Arthur Santspree, the building and maintenance superintendent for Washington Square. Claimant testified that he accepted the job as a maintenance worker at Washington Square because he understood that he would be working primarily in air conditioned buildings and if any work was to be done outside, it would be very little and would not last long. Through August and September, the claimant performed maintenance repairs inside the complex's air conditioned buildings. However, claimant testified that approximately three to four weeks prior to his heart attack, he was required to perform additional outside work. This was due to the fact that the superintendent and a co-employee had taken vacations, leaving more of a load for the claimant to handle, and the fact that the facility had undergone inspections, requiring more work to be performed inside and outside.
Claimant testified that one of his jobs during this time was to pull up fence posts and haul them out from around a retention pond. Claimant testified that this additional work caused him to become dizzy and weak.
On October 27, 1987, the date of claimant's heart attack, he and a co-worker, George Atkinson, were assigned by the superintendent to haul and lay sod near several of the buildings on the employer's complex. They were working on a warm, humid morning in the direct sunlight and had been working approximately 3 1/2 hours hauling sod when claimant had a cardiac arrest.
Mr. Santspree, the claimant's supervisor, testified that he had interviewed claimant and had advised claimant at that time of the nature of the job and the job duties involved. He also testified that he had probably reviewed with claimant 90% of the duties listed on the job description form. Mr. Santspree further testified that about 99% of the work maintenance workers perform is done inside the buildings. He described the work that maintenance workers normally have to do outdoors as follows:
Well, normally it's ... well, we did some erosion work and sodding, of course, as you're aware of, and the sprinkler system, sweeping the carports. That's about it really.
A job description form was entered into evidence, which had been signed by claimant. Claimant's job description indicated that one of his duties as a maintenance assistant was "care of the grounds."
George Atkinson, the other maintenance worker hired by Washington Square, had an identical job description to that of the claimant. Mr. Atkinson explained that it was his understanding that as part of his job he was supposed to help take care of the grounds. Mr. Atkinson further testified that the activity he and claimant were doing the day of the accident was different from their regular routine duties for the employer:
Q. Was this activity that you were doing that day different than your regular routine duties there?

*260 A. Well, yes, that's something that we didn't do very often. I think that's the second time we've done it.
The judge found that claimant's heart attack was not compensable because it occurred while the claimant was engaged in an activity that was routine to his job and therefore denied his claim for benefits.
The general rule regarding the compensability of a heart attack occurring during the course of employment is that the heart attack must have been caused by the unusual strain or overexertion of a specifically identifiable effort not routine to the work the employee was accustomed to performing. Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla. 1961); Richards Department Store v. Donin, 365 So.2d 385 (Fla. 1978). In ascertaining, for workers' compensation purposes, whether a particular activity is routine, it has been said that "the analysis is not one solely predicated on the broad question of what was routine to the claimant; rather, that inquiry must necessarily be circumscribed by a consideration of what was routine to the job the claimant was accustomed to performing." Skinner v. First Florida Building Corp., 490 So.2d 1367, 1369 (Fla. 1st DCA 1986); see also Wiggs Construction v. Knowles, 497 So.2d 942 (Fla. 1st DCA 1986). Further, the court must look to the duties performed by the employee himself rather than by fellow workers, and examine the work done by the employee as an entirety, rather than some isolated segment of the employee's activities. Yates v. Gabrio Electric Co., 167 So.2d 565 (Fla. 1964); Richards Department Store, supra. Under the principles established in the above cases, then, a proper analysis of what is "routine" must focus on the job the claimant was accustomed to performing at the time of his heart attack. Moreover, the court must examine the work done by the employee as an entirety, rather than some isolated segment of his activities. Yates, supra, at 567.
An examination of how the courts have applied these principles is essential to a proper analysis of the instant case. The Supreme Court's decision in Yates is instructive. There, the deputy had awarded workers' compensation death benefits to the widow of an employee. Yates had been employed by the employer as an electrician and, incidentally, as a general handyman for seven years. Approximately 90% of his working time was devoted to the work of an electrician. During the remainder of the time, he was called upon to do incidental chores which, on occasion, involved operating a line truck and ditch digger, bending relatively heavy conduits, and similar work. On the fatal day, Yates was performing his work as an electrician. At 12:30 p.m. he was directed to proceed to a cement works to load onto a pickup truck a number of concrete blocks, each of which weighed between 100 and 125 pounds. The loading was one continuous operation which took approximately twenty minutes. Upon completing this assignment, Yates left the concrete plant and was later found lying by his truck on the side of a road with severe chest pains. He was taken immediately to a hospital where a doctor diagnosed his condition as an acute myocardial infarction. He died at 5:00 p.m. the same day.
The deputy expressly held that the fatal heart attack was causally related to the employment; that any heavy labor performed by the employee was merely intermittent and was not a part of his routine employment; and that the lifting and loading of the concrete blocks was not routine to the type of work Yates was accustomed to performing. Accordingly, the deputy awarded compensation benefits to the widow. On review, the Commission reversed. It held as a matter of law that the activities of the decedent on the day of his death did not constitute an unusual exertion.
However, the Supreme Court found that on the matter of the type of work which Yates performed, the findings of the deputy were adequately supported. Both the employer and a fellow worker had testified that 90% of Yates' time was devoted to relatively light work as an electrician's helper. The remaining 10% was devoted intermittently to what could be described as heavy work, such as bending conduits and operating the ditch digger. The employer *261 testified further that the lifting and loading of heavy concrete blocks was not routine to the type of work which Yates generally performed. The court held that, in ascertaining whether a particular activity is nonroutine, the court must look to the duty performed by the employee himself, rather than his fellow workers. Similarly, the work done by the employee as an entirety should be examined, rather than some isolated segment of his activities. The court thus found that competent substantial evidence supported the finding of the deputy that any heavy labor performed by the deceased employee, who devoted 90% of his time to relatively light work as an electrician's helper and only 10% to heavy work, was merely intermittent and not part of his routine employment.[1]
Although generally this court's standard of review in cases of this nature is restricted to whether there was competent substantial evidence to support the judge's finding that a particular activity was routine, see Stinson v. Stroh's Brewing Co., 540 So.2d 893 (Fla. 1st DCA 1989), we are not so restricted in the present case because it is apparent that the judge applied the wrong legal standard. The judge essentially based his finding that the activity claimant was engaged in at the time of his heart attack was routine to his job on the ground that claimant was hired as a maintenance assistant whose official job duties included ground care. The judge relied on the fact that the job description and the testimony of claimant's supervisor and co-employee established that claimant's position as a maintenance assistant involved taking care of the grounds, which included laying sod.
However, under the proper legal standard, as initially articulated in Victor Wine and later refined in subsequent case law, the fact that claimant was hired as a maintenance assistant whose official job duties included taking care of the grounds is not determinative of what is "routine." The cases establish that in determining what is routine, the court must look to the job the claimant is accustomed to performing. Claimant may be hired as a maintenance assistant whose job description states that care of the grounds is one of his job duties. Other workers may in fact perform these job duties. But if the claimant spends most of his time doing maintenance work on the inside of buildings, and only on occasion does claimant engage in any outside activity, that outside activity is not routine to the job the claimant is accustomed to performing.[2]See *262 Yates v. Gabrio Electric Co., 167 So.2d 565 (Fla. 1964); Warman v. Metropolitan Dade County, 228 So.2d 908 (Fla. 1969) (Supreme Court held that a bulldozer operator who suffered a heart attack after approximately ten minutes of shoveling was involved in an activity constituting an unusual exertion where the evidence revealed that the employee used the shovel only once a year).
Under the proper legal standard set forth in Victor Wine, there is competent substantial evidence in the present case to establish a sufficient legal connection between claimant's industrial accident and his heart attack, i.e., that claimant was engaged in an activity that was not "routine" to the job he was accustomed to performing. The claimant's supervisor testified that 99% of claimant's job as a maintenance assistant was to be performed inside the buildings. Moreover, claimant's co-worker on the day of his heart attack testified that the activity they were doing that day was different from their regular routine duties with the employer.
Because the judge applied an incorrect legal standard, he should be given the opportunity to review the evidence again in light of the correct legal standard and determine whether the activity was routine and, if not, whether there was sufficient evidence of medical causation. See McCall v. Dick Burns, Inc., 408 So.2d 787 (Fla. 1st DCA 1982).
Accordingly, the order appealed is REVERSED and REMANDED for further proceedings consistent with this opinion.
BOOTH and ZEHMER, JJ., concur.
NOTES
[1] While Yates concerned whether the deputy had competent substantial evidence upon which to base his findings, the court's analysis is nonetheless helpful in understanding what factors are to be considered in determining whether a particular activity is "routine."
[2] Compare Daniels v. Office Mart Holding Corp., 548 So.2d 828 (Fla. 1st DCA 1989). Daniels involved an employee who died of a heart attack on his first day of work. The employee was hired for a job in sales, but when he was hired the store had not yet opened. During the days prior to the opening, various employees were engaged in preparing the store. Although such pre-opening activities would not be a part of the employee's usual sales work after the store opened ten days later, the employee was expected to and agreed to perform these duties prior to the opening. The court found that the record supported the deputy's conclusion that the employee's heart attack was precipitated by activities which were routine to the work the employee was hired to perform. The court reasoned that while these initial activities were to be of limited duration, lasting only until the opening of the store when the employee would thereafter be engaged in sales work, this durational limit does not render the activities any less routine.

Daniels is distinguishable from the instant case. When an employee suffers a heart attack on the first day of a new job, in determining what is "routine," it is difficult to apply the general legal standard of "what was routine to the job the claimant was accustomed to performing." (e.s.) See Skinner v. First Florida Building Corp., 490 So.2d 1367, 1369 (Fla. 1st DCA 1986); Wiggs Construction v. Knowles, 497 So.2d 942 (Fla. 1st DCA 1986); Yates v. Gabrio Electric Co., 167 So.2d 565 (Fla. 1964). Under such exceptional circumstances, the court has no choice but to look at what the employee was expected to do and had agreed to do. However, the circumstances of Daniels are different from the situation where an employee has performed a certain task for several months, or years, and such a task accounts for 99% of the employee's job duties, and the claimant intermittently or on occasion performs another task, and it is during the performance of this intermittent task that a claimant suffers a heart attack. Certainly such activity is not routine to the job the claimant is accustomed to performing.