WOLF, Judge.
The employer/carrier appeals a workers’ compensation order which found that the heart attack of the claimant, Coker, was compensable. We affirm.
Claimant, a 58-year-old man, was employed by Gardinier, Inc. (employer) as a “dragline oiler” for approximately five years before his heart attack. A dragline is a piece of equipment used in phosphate mining, which requires two employees to operate. One is the dragline operator and the other is the oiler. The dragline oiler is responsible for maintaining the machine, keeping it greased and clean, and assisting in moving the dragline. The oiler’s responsibility in the moving process primarily consists of moving and straightening large electrical power cables used by the drag-line.
A normal-eight-hour day for the claimant is from 7:00 a.m. to 3:00 p.m. If no move is to be made on a day, the operator begins to dig, and the oiler periodically oils or greases the boom on the machine or sweeps or washes the cab. On a day when a normal move is required, claimant would spend no longer than five or 10 minutes picking up the cable for the move.
A dragline is usually moved a short distance every one or two days. A normal move is between four and five “steps,” and a step is approximately seven feet. Longer moves are only required when the dragline is moved to a new job site area. The crane and dragline which the claimant was working on had been in the same area for three to three and one-half years. Testimony from various witnesses indicated that normally moves of this type do not occur more frequently than once a year.
On March 7 and 8, the claimant was involved in making a move of the dragline to a new site. The planned move was two miles and was to take four days. On the day of the planned move, there were brake problems with the dragline which caused it to swing to the left upon the completion of a step. There was testimony that this made claimant’s job “10 times harder” because he had to keep the cable pulled back so the crane would not come down on it.
In preparation for the longer move, the claimant had to hook up three to five loops of cable in a sling hook on the shoe of the crane. When claimant reached to hook the cable to move the sling, he felt his first chest pains. It was approximately 7:30 a.m. on March 7. The claimant continued to work. The dragline was walked all day in increments of 1,500 to 2,000 feet, from transformer to transformer, without stopping. The claimant testified that the move was much more difficult than a normal day because of the machine sliding, the brake problems, and because of the length of the move. It was also difficult because the temperature was 85 to 95 degrees, and the move was being made through a sand bed. Claimant testified that he worked the entire shift and experienced chest pains all day. Claimant worked an entire shift again on March 8, which involved walking the dragline between 2,000 to 4,000 feet, and experienced constant chest pain. On March 9, the claimant went to his family doctor who hospitalized him for a heart attack.
There was unrefuted medical testimony that the claimant’s work activities on March 7 and 8 were cause-related to his heart attack.
*256 The judge of compensation claims made numerous factual findings to support the conclusion that claimant’s heart attack was compensable. The judge found that it was an unusual occurrence to move the dragline long distances. In support of the conclusion, he found that there was a significant increase in physical demand between the dragline oiler’s normal day-to-day routine when the dragline is mining versus once a year or longer when the dragline oiler is required to be on the ground the entire day (eight to 10 hours). During the process of moving and pulling cable out of the way as the dragline walks, the cable loops are longer and heavier because of the continual forward movement which necessitates almost constant physical exertion to lift and pull from 35 to 100 pounds or more. The judge found that “moving a dragline to a new moving site is an infrequent operation for a dragline oiler, necessitating unusual physical exertion that was not routine to the type of work that the employee was accustomed to performing. As a result of the dragline having brake problems, it caused additional unusual problems in the walking of the dragline.”
In the case of Walker v. Friendly Village of Brevard, 559 So.2d 258 (Fla. 1st DCA 1990), this court stated the rule regarding the compensability of a heart attack:
The general rule regarding the compens-ability of a heart attack occurring during the course of employment is that the heart attack must have been caused by the unusual strain or overexertion of a specifically identifiable effort not routine to the work the employee was accustomed to performing. Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla.1961); Richards Depart. Store v. Donin, 365 So.2d 385 (Fla.1978). In ascertaining, for workers’ compensation purposes, whether a particular activity is routine, it has been said that ‘the analysis is not one solely predicated on the broad question of what was routine to the claimant; rather, that inquiry must necessarily be circumscribed by a consideration of what was routine to the job the claimant was accustomed to performing.’ Skinner v. First Florida Bldg. Corp., 490 So.2d 1367, 1369 (Fla. 1st DCA 1986).... Further, the court must look to the duties performed by the employee himself rather than by fellow workers, and examine the work done by the employee as an entirety, rather than some isolated segment of the employee’s activities. Yates v. Gabrio Elec. Co., 167 So.2d 565 (Fla.1964); Richards Department Store, supra. Under the principles established in the above cases, then, a proper analysis of what is ‘routine’ must focus on the job the claimant was accustomed to performing at the time of his heart attack. Moreover, the court must examine the work done by the employee as an entirety, rather than some isolated segment of his activities. Yates, supra, at 567.
Walker, supra, at 260.
It is clear from the evidence that the extent of the activity on March 7 and 8 was significantly greater than usual and not routine to the job the claimant was accustomed to performing. In addition, the brake problems that were encountered further removed the activity on those days from what is considered to be routine. We, therefore, find that there was substantial competent evidence to support the ruling of the judge of compensation claims that the heart attack was, in fact, compensable.
Accordingly, we affirm.
SHIVERS, C.J., and BOOTH, J., concur.