LEWIS, J.
Claimant, George W. Harper, appeals a final order of the Judge of Compensation Claims (“JCC”) in which the JCC found that claimant’s heart attack was not com-pensable because claimant was not involved in any physical stress or exertion prior to suffering the heart attack that was non-routine to his job as a fire protection team member. On appeal, claimant essentially contends that the JCC’s finding is not supported by competent, substantial evidence. We agree and, therefore, reverse the order and remand for further proceedings.
Claimant, who was sixty years of age at the time of the final hearing, testified that he had worked as a fire protection team member for the employer, Sebring International Raceway, since 1997 and had worked “in and around races” since 1969. Claimant described his position with the employer as consisting of fire protection for the raceway’s customers, clean-up, maintenance, course safety, “EMS,” and reconstruction of tire barriers. Claimant testified that he worked three to five days a week during the raceway’s busy season, which started near the end of October and continued through March. Claimant further testified, “Basically we sit and wait for something to happen.” If no accident occurred, claimant would turn his radio in, park his truck at the operations building, and return home.
*290 On November 23, 2001, a vehicle racing on the raceway had a suspension failure while traveling at approximately 160 miles per hour and crashed into a nine-inch-thick retaining wall. Claimant, who was one of the first fire rescue workers to arrive at the accident scene, unloaded the fire extinguishers and carried a hydraulic pump, weighing 125 pounds, and its two attachments, each weighing approximately forty to forty-five pounds, to the scene. Using the pump, claimant attempted to extricate the driver of the vehicle, who was lapsing in and out of consciousness. Due to his medical background, claimant also assisted the EMS workers with the driver. According to claimant, all four fire protection team members used the pump, i.e., the jaws of life. While some cut, others pulled the vehicle’s bracing in order to extricate the driver. In total, it took claimant and the other three fire protection team members approximately forty-five minutes to extricate the driver of the vehicle. After the driver was placed into a helicopter, claimant and his co-workers began disassembling the pump, cleaning the race track, packing tools in their trucks, and filling the pump with fuel. Claimant first began experiencing unusual symptoms, including dizziness and vision problems, five minutes after the helicopter lifted off the track. After losing consciousness, claimant was rushed to the hospital, where he learned that he had suffered a heart attack. Claimant underwent a triple bypass four or five days later. Prior to this incident, claimant had been diagnosed with high blood pressure and diabetes, conditions for which he had been taking medication.[1]
With respect to the accident, claimant testified that it “was the first major accident that [he] had been involved with at the track since [he] started.” Although claimant had been involved with serious accidents in the past, the accidents had occurred all over the United States while claimant was traveling with other race series. According to claimant, the EMS workers at the raceway would ask for his assistance maybe twice per year. William Berry, a fellow member of the fire protection team, similarly testified that the extrication at issue was “definitely the longest one [he had] ever worked on.” The raceway’s president and general manager, William Stephenson, testified that, while there are accidents “pretty much every week,” drivers only had to be extricated from their vehicles “[p]robably a couple times a year.” Stephenson also testified that the driver’s injuries in this case were more extreme than usual.
In his order, the JCC, in noting claimant’s cardiac history, found that claimant did not perform any job-related duty, any job-related task, or any job-related responsibility while aiding and extricating the injured driver from his vehicle that he had not previously performed while employed with the raceway. According to the JCC, the very nature of claimant’s position required him to work as responsively and as quickly as possible to administer proper medical attention to injured drivers. The JCC determined that the standard as set forth in Victor Wine and Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla.1961), over *291 ruled in part on other grounds by Evans v. Fla. Indus. Comm’n, 196 So.2d 748 (Fla.1967), governed claimant’s claim for workers’ compensation benefits due to claimant’s pre-existing cardiac condition. The JCC set forth:
I find that the record is devoid of any evidence that the Claimant engaged in any physical stress or exertion on November 23, 2001 that was non routine to his job with Sebring International Raceway. Though the evidence shows that the time spent aiding the driver in the crash which occurred on November 23, 2001 was of a longer period than average, I find that none of the tasks performed by the Claimant on that day were non routine to his job and were of the type performed by him on prior occasions. I find the seriousness of the accident to be irrelevant to this Court’s analysis in light of the fact the tasks the claimant performed on November 23, 2001 were no different then [sic] those he performed on prior occasion with this same employer.
In light of his conclusion that claimant failed to establish that he met the initial threshold of showing a physical exertion not routine to his job, the JCC declined to address the issue of medical causation. The JCC concluded that claimant did not sustain an injury within the course and scope of his employment and, therefore, denied claimant’s claim for workers’ compensation benefits. This appeal followed.
As we have explained:
The general rule regarding the com-pensability of a heart attack occurring during the course of employment is that the heart attack must have been caused by the unusual strain or overexertion of a specifically identifiable effort not routine to the work the employee was accustomed to performing. Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla.1961); Richards Department Store v. Donin, 365 So.2d 385 (Fla.1978). In ascertaining, for workers’ compensation purposes, whether a particular activity is routine, it has been said that “the analysis is not one solely predicated on the broad question of what was routine to the claimant; rather, that inquiry must necessarily be circumscribed by a consideration of what was routine to the job the claimant was accustomed to performing.” Skinner v. First Florida Building Corp., 490 So.2d 1367, 1369 (Fla. 1st DCA 1986); see also Wiggs Construction v. Knowles, 497 So.2d 942 (Fla. 1st DCA 1986). Further, the court must look to the duties performed by the employee himself rather than by fellow workers, and examine the work done by the employee as an entirety, rather than some isolated segment of the employee’s activities. Yates v. Gabrio Electric Co., 167 So.2d 565 (Fla.1964); Richards Department Store, supra. Under the principles established in the above cases, then, a proper analysis of what is “routine” must focus on the job the claimant was accustomed to performing at the time of his heart attack. Moreover, the court must examine the work done by the employee as an entirety, rather than some isolated segment of his activities. Yates, supra, at 567.
Walker v. Friendly Vill. of Brevard, 559 So.2d 258, 260 (Fla. 1st DCA 1990); see also Zundell v. Dade County Sch. Bd., 636 So.2d 8, 10 (Fla.1994) (explaining that, under Victor Wine, a claimant whose cardiovascular injury may have been exacerbated by a pre-existing condition may be unable to recover without first establishing that the injury occurred during a job-related exertion over and above normal working conditions). Under the Victor Wine test, whether a heart attack occurred during a job-related exertion over *292 and above normal working conditions constitutes the test for legal causation, and proof of this element is geared towards satisfying the requirement that an injury is one arising out of the employment. McCall v. Dick Burns, Inc., 408 So.2d 787, 790 (Fla. 1st DCA 1982). Under the Victor Wine test, evidence of medical causation is also required. Id. We review the JCC’s findings regarding the compensability of claimant’s heart attack to ascertain whether it is supported by competent, substantial evidence. See Gardinier, Inc. v. Coker, 564 So.2d 254, 256 (Fla. 1st DCA 1990) (applying the competent, substantial evidence standard in reviewing the JCC’s finding that the claimant’s heart attack was compensable).
In finding that claimant’s heart attack was not compensable, the JCC found the seriousness of the accident and the “longer period than average” that it took to extricate the driver to be irrelevant given that claimant had previously engaged in the tasks he performed prior to suffering his heart attack. However, merely because a claimant may have previously performed the same or similar tasks as he or she performed prior to suffering a heart attack does not make the task routine to the claimant’s job. In other words, when applying the Victor Wine test, the circumstances surrounding a claimant’s performance of his or her job duties must be considered and are not, as found by the JCC, irrelevant to the compensability determination.
For instance, in Walker, the claimant accepted a job as a maintenance worker with the employer because he understood that he would be working primarily in air-conditioned buildings and that any outside work would be brief. See 559 So.2d at 259. For two months, the claimant performed maintenance repairs inside the air-conditioned buildings. Id. However, prior to his heart attack, the claimant had been required to perform additional outside work, including pulling up and hauling fence posts from around a retention pond. Id. On the day of his heart attack, which was a warm, humid day, the claimant was assigned to haul and lay sod in the direct sunlight. Id. The claimant’s supervisor testified that the normal outdoor work for maintenance workers was to do some erosion work, sodding, and sweeping the carports. Id. In noting that the usual standard of review in workers’ compensation cases is whether competent, substantial evidence supports the ruling, we found that the JCC applied the wrong legal standard because he essentially based his finding that the activity the claimant was engaged in at the time of his heart attack was “routine to his job on the ground that claimant was hired as a maintenance assistant whose official job duties included ground care.” Id. at 261. As we explained, the official job description was not determinative of what was routine. Id. In other words, if a claimant spends most of his time doing maintenance work on the inside of buildings and only on occasion engages in outdoor activity, that outdoor activity is not routine to the job the claimant is accustomed to performing. Id. As a result, we reversed and remanded for the JCC to apply the correct legal standard. Id. at 262.
Similarly, in Coker, the claimant, who was employed as a dragline oiler for approximately five years before his heart attack, was responsible for maintaining the machine, keeping it greased and clean, and assisting in moving the dragline. See 564 So.2d at 255. On a normal day, the claimant would spend no more than five or ten minutes picking up cable for a move. Id. While a regular move was between four and five steps, a longer move was only required when the dragline was moved to a new job site area. Id. The crane and *293 dragline that the claimant had been working on had been in the same area for three to three and one-half years. Id. Longer moves did not occur more frequently than once a year. Id. Prior to his heart attack, the claimant was involved in moving the dragline to a new site, which was scheduled to take four days. Id. On the day of the planned move, there were brake problems with the dragline, which made the claimant’s job “ TO times harder’ ” because he had to keep the cable pulled back so that the crane would not come down. Id. The claimant testified that the move was much more difficult than a normal day because of the machine sliding, the brake problems, and because of the length of the move. Id. It was also more difficult because the temperature was eighty-five to ninety-five degrees, and the move was being made through a sand bed. Id. In affirming the JCC’s finding of compensa-bility, we noted that it was clear from the evidence that the extent of the claimant’s activity was significantly greater than usual and not routine to the job that the claimant was accustomed to performing. Id. at 256. We also noted that the brake problems that were encountered further removed the activity on those days from what was considered to be routine. Id.; see also Silvera v. Miami Wholesale Grocery, Inc., 400 So.2d 439, 440-41 (Fla.1981) (finding that the record indicated that the loading activity preceding the claimant’s heart attack was unusual to his performance and noting that the claimant, whose customary work was as a sales representative, spent several hours prior to his heart attack loading cases of beer and liquor onto a ship); Watman v. Metro. Dade County, 228 So.2d 908, 908-09 (Fla.1969) (affirming the award under the Victor Wine test and noting that the claimant, a heavy equipment operator who testified that he only used the shovel attached to his grader maybe once a year, suffered a heart attack after digging and chopping weeds when his grader ran into a concrete spillway); Hastings v. City of Fort Lauderdale Fire Dep’t, 178 So.2d 106, 109-10 (Fla.1965) (reversing the Industrial Commission’s reversal of the deputy’s finding that the claimant’s heart attack was com-pensable, noting that the testimony disclosed that the claimant’s regular duties on his twenty-four hour stint as an engineer/driver included cleaning and sweeping the fire station, preparing meals, cleaning and polishing the fire truck, and making sure the truck was always in good running condition, and noting that the claimant had the heart attack while engaged in a large fire drill, which, while normally a monthly event, did not take place every month); Yates v. Gabrio Elec. Co., 167 So.2d 565, 567 (Fla.1964) (concluding that the claimant’s heart attack was compensable given the testimony that ninety percent of the claimant’s time was devoted to relatively light work and that only ten percent was devoted intermittently to what could be described as heavy work, such as bending conduits and operating the ditch digger, and given the testimony that the lifting and loading of heavy concrete blocks was not routine to the type of work the claimant generally performed); Wiggs Constr. v. Knowles, 497 So.2d 942, 943 (Fla. 1st DCA 1986) (noting that the claimant, a carpenter who worked for the employer for one day prior to his heart attack and whose job with the employer was “do it all” carpentry that included rough carpentry normally assigned to younger carpenters, hoisted four-by-eight plywood sheets weighing seventy-five pounds from the ground to the roof of a two-story building alone prior to his heart attack, noting that such a job normally required two men, and affirming the JCC’s order finding the claimant’s heart attack compensable given that the excessive heat and humidity, combined with the claim *294 ant’s act of hoisting the plywood alone, constituted an identifiable exertion not routine to the general carpentry job for which the claimant was hired); McCall, 408 So.2d at 791 (finding a lack of competent, substantial evidence to support the deputy’s finding that the claimant did not perform an unusual, non-routine exertion and noting that the claimant, whose job was primarily supervisory in nature, testified that he had never strained himself so hard on the job and possibly had never strained himself so hard in any context as when he attempted to jerk an outrigger bolt free).
As we explained in Walker, if a claimant spends most of his or her time doing maintenance work inside air-conditioned buildings and only on occasion engages in outdoor activity, the outdoor activity is not routine to the job the claimant is accustomed to performing. See 559 So.2d at 261. The same logic underlying our Walker opinion applies to the facts of this case. While claimant conceded that the functions he performed on the day of his heart attack were functions he had performed in the past, he also testified that EMS would only request his help twice a year following an accident. The employer’s president and general manager similarly testified that although crashes regularly occurred, extrications only occurred a couple of times per year. Thus, contrary to the JCC’s findings, it cannot be said that claimant was performing a routine job duty when he assisted in extricating the driver from his vehicle. While claimant’s job duties may include aiding in the extrication of a driver when necessary, an employee’s official job duties do not determine what is routine for that employee. See id.
The facts of this case can also be analogized to the facts in Coker. Like the claimant in that case who suffered a heart attack while engaging in a longer move of a dragline that was made more difficult because of the machine sliding, the brake problems, and the length of the move, here, claimant testified that the extrication was the longest and most extreme accident he had been involved with while working for the employer. This testimony was corroborated by claimant’s co-worker and the raceway’s president and general manager, who testified that the driver’s injuries were more extreme than usual. While the E/C relies on claimant’s testimony that he had previously handled accidents similar to the one at issue, those accidents, according to claimant, occurred while he was employed with other race series. The type of work a claimant has been accustomed to performing in previous jobs, whether for the same employer or for a different employer, is irrelevant when applying the Victor Wine test. See Batson Cook Co. v. Thomas, 635 So.2d 991, 993 (Fla. 1st DCA 1994) (noting that it was undisputed that the claimant had not worked for the employer continuously since 1989 and that the job he had when he continued with the employer in 1991 was different from the one he had previously held with the employer and reversing the JCC’s finding of no compensability). Like the heavy equipment operator in Warman who suffered a heart attack after digging and chopping weeds, which was only necessary maybe once a year, the engineer/driver in Hastings who suffered a heart attack while engaged in a large fire drill, which happened approximately once a month, and the electrician in Yates who suffered a heart attack while engaged in heavy work, which consumed only ten percent of the claimant’s time, claimant only assisted the EMS workers approximately twice a year and was involved in extrications “[pjroba-bly a couple times a year.” Thus, such duties were not routine to claimant’s job as a fire protection team member. Had *295 claimant suffered a heart attack while sitting in his truck awaiting an accident to occur, a task which, according to the evidence, was routine to claimant’s job, the JCC’s ruling would be correct. However, given the facts of this case, the JCC’s finding that claimant’s heart attack is not compensable is not supported by competent, substantial evidence. Accordingly, we REVERSE the JCC’s order and REMAND with instructions that the JCC address the issue of medical causation. See § 440.02(35), Fla. Stat. (2002) (providing that an accidental injury or death arises out of employment if work performed in the course and scope of employment is the major contributing cause of the injury or death).
BROWNING and POLSTON, JJ„ concur.

. Dr. Sayad, a cardiologist, testified that claimant was found to have been suffering from significant heart disease. When asked his opinion as to what caused the heart attack, Dr. Sayad replied, “Well, again, as I stated before, the stress, the physical stress and the mental stress he was going through could have triggered the heart attack....” Dr. Johnson, also a cardiologist, acknowledged during his deposition that the workplace activity, i.e., the extrication of the driver, was the major contributing cause of the aggravation of claimant’s underlying condition.